[Civ. No. 69025. Second Dist., Div. Two. May 21, 1985.]

MORRIS B. DALITZ et al.,
Plaintiffs, Cross-defendants and Appellants, v.
PENTHOUSE INTERNATIONAL, LTD., et al.,
Defendants, Cross-complainants and Appellants.

[Opinion certified for partial publication.*]

*At the direction of the court, and pursuant to California Rules of Court, rule 976.1, the portion of the opinion certified for publication follows.

**COUNSEL**

Phillips, Nizer, Benjamin, Krim & Ballon, Buchalter, Nemer, Fields, Chrystie & Younger and John A. Dito for Plaintiffs, Cross-defendants and Appellants.

Paul, Hastings, Janofsky & Walker, Carl W. Shapiro, Kent Farnsworth, Grutman, Miller, Greenspoon & Hendler, Grutman, Miller, Greenspoon, Hendler & Levin, Norman Roy Grutman and Jewel H. Grutman for Defendants, Cross-complainants and Appellants.

**OPINION**

**BEACH, J.—**

. . . . . . . . . . . . . . . . . . . . . . . .*

PART TWO

RESPONDENTS' CROSS-APPEAL

(1) *Statement of the Case*

The original plaintiffs in this case were five corporations and four individuals. The original complaint arose out of an article published by Pent-

*See footnote, *ante,* page 468.

house International, Ltd. (Penthouse) which on its face was libelous of appellants Morris B. Dalitz and Allard Roen. Dalitz and Roen were accused of being mobsters, gangsters and members of organized crime. The resort, La Costa, with which they were connected was accused of being an organized crime headquarters. The article also implicated Dalitz and Roen in the Watergate scandal, nationwide bank failures, securities frauds totaling some $50 billion, criminal misuse of Teamster Pension Funds and other swindles of many kinds.

The trial court by summary judgment held that plaintiffs (appellants here), Dalitz and Roen, were public figures, unable to prove malice, and their complaint was dismissed. They appealed.

By unpublished opinion we have ruled on the appeal by plaintiffs in their action for libel against defendants/publishers and reporters.

The defendants/publishers (cross-appellants) filed a cross-complaint also for libel and slander, against plaintiffs. The trial court dismissed that cross-action. The defendants/publishers by their cross-appeal contest that judgment. In this part of the opinion we consider defendants' cross-appeal from the trial court's dismissal of the publishers' cross-complaint for slander and libel brought against the original plaintiffs. The dismissal was a sanction for failure of cross-appellants to disclose their sources. We affirm this judgment.

The libelous and slanderous statements on which cross-appellants filed their cross-complaint were alleged to have been made at a press conference convened by plaintiffs *La Costa* et al., including appellants Dalitz and Roen, to respond to the article which had appeared in Penthouse magazine. The press conference was held on the same day the main complaint for libel against *Penthouse* et al., was filed.

The cross-complaint was eventually dismissed by the trial judge, Judge Dell, as a sanction for the failure of reporters Jeff Gerth and Lowell Bergman to disclose their confidential sources. The sanction was applied to cross-complainants Penthouse and publisher Guccione even though Gerth and Bergman were not parties to the cross-complaint. At a hearing held prior to the actual dismissal of the cross-complaint, Judge Dell well perceived and analyzed the unique situation stating: "I find this type of issue particularly difficult, whereas in this case even though it is not the reporters who have filed the cross-complaint, where the alleged libeling party has contended that it has been libeled and has filed a cross-complaint for defamation. I suppose it would be an even clearer case if Mr. Bergman and Mr. Gerth were the cross-complainants, but I must say I don't see an immense

amount of difference. Penthouse was certainly—perhaps I shouldn't use the word 'capitalized' or 'benefited,' I don't know whether it is an ultimate benefit or not, certainly has displayed the works of Mr. Bergman and Mr. Gerth and their work has been the basis for the libel suit and the comments about their work are the basis for the cross-complaint.''

After the filing of the dismissal, cross-appellants petitioned this court for a writ, arguing that the trial court had no jurisdiction to dismiss the cross-complaint. (*Penthouse International, Ltd.* v. *Superior Court*, 2 Civ. No. 60769.) This court summarily denied the petition. The California Supreme Court denied cross-appellants' petition for hearing.

Prior to the dismissal, appellants (cross-respondents herein) made several discovery motions requesting the identities of the confidential news sources. Another judge, LeSage, rejected cross-appellants' claim of privilege. Judge LeSage's holding was upheld by the Court of Appeal and the California Supreme Court refused to grant a hearing.

Also prior to the dismissal still another judge, Phillips, ruled that it was "both idle and erroneous to say that the First Amendment affords a newsman no protection whatever as to his confidential sources. (Cf. *Caldero* v. *Tribune Publishing Co.,* 562 P.2d 791, 797, 98 Idaho 288 (1977); *Dow Jones & Co., Inc.* v. *Superior Court,* 303 N.E.2d 847, 849 (Mass. 1973.)) It is the view of this court that *Branzburg* v. *Hayes,* 408 U.S. 665 cannot legitimately be read without regard to the concurring opinion of Mr. Justice Powell (408 U.S. at 709), as his vote was necessary to that decision. So read it becomes clear that an '. . . asserted claim to [a First Amendment] privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony. . . .' [408 U.S. at 710; concurring opinion.]" Judge Phillips then ruled that the record presented to him was inadequate to form the basis for the balancing required. He then set forth the considerations to be addressed through additional discovery and pending that discovery he denied the motion without prejudice to its renewal at a later date.

Appellants (cross-respondents) conducted additional discovery along the lines suggested by Judge Phillips and thereafter renewed their motion to compel disclosure before Judge Dell. In ruling upon the motion and dismissing the cross-complaint of cross-appellants in October 1980, Judge Dell stated "Plaintiff's motion is granted, upon the determination by the court that there is no constitutional or statutory privilege available in this action to withhold sources for the alleged libel. Most persuasive in the court's view is *Herbert* v. *Lando* (1979) 441 U.S. 153, 99 S.Ct. 1635, which rejects

the principle of an analogous 'editorial process' privilege. The court's feeling is that the Supreme Court's language at pages 1641-1649 rules out a 'source' privilege just as it does an 'editorial process' privilege. Accordingly, *Herbert* v. *Lando* has rendered Judge Phillips' 1978 ruling moot." Cross-appellants then timely filed a notice of appeal from the order of dismissal.

(2) *The Trial Court Properly Exercised Its Jurisdiction in Dismissing the Cross-complaint*

■ Cross-appellants claim that the trial court exceeded its jurisdiction in dismissing the cross-complaint in that the trial court's order was directed against Gerth and Bergman, the reporters who wrote the La Costa article, and only against Gerth and Bergman. Since only Penthouse and Guccione prosecuted the cross-complaint, cross-appellants claim that the trial court had no jurisdiction to dismiss against parties who had not violated the order. Cross-appellants maintain that they had no control over Gerth and Bergman at the time the order issued; that they could not have compelled Gerth and Bergman to comply with the order in any event. The applicable code section, Code of Civil Procedure section 2034, subdivision (b), which grants the trial court jurisdiction in this matter, provides in relevant part: "(1) The court may punish . . . the refusal of any person to obey any order made by the court under subdivision (a). [¶] (2) If any party or person for whose immediate benefit the action or proceeding is prosecuted or defended, or an officer, director, superintendent, member, agent, employee, or managing agent of that party or person refuses to obey an order made under subdivision (a), or if any party or an officer or managing agent of a party refuses to obey an order made under Section 2019, 2031, or 2032, the court may make any orders in regard to the refusal which are just, including, but not limited to, any of the following: . . . (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

Cross-appellants state that the trial court lacked jurisdiction to apply the sanction of dismissal against them since Judge Dell's order did not specifically name them and on the assertion that only the reporters, Gerth and Bergman, knew the identities of the confidential sources.

We can find no California case directly on point in which a publisher has been held responsible for acquiring the knowledge of the confidential sources of its reporter or agent who actually wrote a story.

In the Idaho case of *Sierra Life Ins.* v. *Magic Valley Newspapers* (4 Media L.Rep. 1689, 1690), revd. on other grounds in *Sierra Life Ins.* v. *Magic*

*Valley Newspapers* (1980) 101 Idaho 795 [623 P.2d 103]), the court held that "defendants have suggested that sanctions if any should be imposed only upon defendants High and Lazarus as they were the ones actually being deposed. I cannot accept this view. The corporation, by and through its chief executive officer, its managing editor and its reporter have acted in concert in refusing to comply with the lawful court order; . . . [t]o impose sanctions only on High and Lazarus would merely make them martyrs to the unbelievers." The Idaho Supreme Court approved this language: "One of Magic Valley's arguments on appeal was that it should not be held liable for the failure of other defendants, allegedly beyond its control, to comply with court-ordered discovery. Since there was no real effort made by the newspaper to disassociate itself from the acts of reporters High and Lazarus—in fact, several editorials by the newspaper declared its continued support for the policy of nondisclosure of sources—we treat the defendants in this case as a single entity." (*Id.*, at p. 104, fn. 1.)

The Supreme Court of Idaho went on to reverse the trial court's decision imposing the sanction of default against the newspaper on due process grounds. The court held that the imposition of a default judgment, leaving only the issue of damages, violated the newspaper's due process rights in that the newspaper was not able to raise the valid defense of truth, which defense did not depend upon the discovery sought by the plaintiff. This is decidedly not the situation in the instant case. While Judge Dell did order that at trial the plaintiffs would be entitled to an instruction that failure to provide the identities of the confidential sources precluded the defendants from asserting that there were in fact any sources at all for the article, he did not order that a default be entered. Any other valid defenses which cross-complainants (cross-appellants here) had as defendants to the original action against them were still preserved. They were not out of court.

We are of the opinion that the cross-action by Penthouse involves the acts of its reporters Gerth and Bergman. Accordingly, for the purposes of the cross-complaint the reporters, together with cross-complainants (here cross-appellants), constitute a single entity. We hold the trial court did not exceed its jurisdiction in striking cross-appellants' cross-complaint due to the failure of the reporters to disclose their confidential sources.

(3) *Code of Civil Procedure Section 2034, Subdivision (a) as Applied Is Constitutional*

Cross-appellants claim that the sanction imposed by the trial court is unconstitutional as overbroad and for failure to give notice. As noted above in distinguishing the sanction imposed in the case of *Sierra Life Ins. Co.* v. *Magic Valley Newspapers, supra*, 623 P.2d 103 from the sanction

imposed in the instant case, we find that the discovery order was not unconstitutionally overbroad but was tailored to the requirement that cross-respondents be allowed valid discovery and also did not deprive cross-appellants of their right to defend the main action. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266]; *Hillman* v. *Stults* (1968) 263 Cal.App.2d 848, 884 [70 Cal.Rptr. 295]; cf. *Societe Internationale* v. *Rogers* (1958) 357 U.S. 197 [2 L.Ed.2d 1255, 78 S.Ct. 1087]; *Hovey* v. *Elliott* (1897) 167 U.S. 409 [42 L.Ed. 215, 17 S.Ct. 841].)

Cross-appellants rely on the case of *Blumenthal* v. *Superior Court* (1980) 103 Cal.App.3d 317 [163 Cal.Rptr. 39] for the proposition that a sanction cannot be ordered against a party who did not have notice that the sanction might be entered and therefore could not defend against the imposition of the sanction. No failure of notice exists in the instant case and cross-appellants' reliance upon the *Blumenthal* case is misplaced.

(4) *The Constitutionality of the Trial Court's Holding That Disclosure of Confidential Sources Could Be Compelled*

Judge Dell's decision that the sources of reporters Gerth and Bergman should be produced was based on his perception that the United States Supreme Court in *Herbert* v. *Lando* (1979) 441 U.S. 153 [60 L.Ed.2d 115, 99 S.Ct. 1635] ruled out a source privilege just as it did an editorial process privilege. "I construe a Supreme Court case [Herbert] which really doesn't pass on the point to hold that there is no such thing as a source privilege in civil litigation."

Recently, *Mitchell* v. *Superior Court* (1984) 37 Cal.3d 268 [208 Cal.Rptr. 152, 690 P.2d 625] dealt with this issue of compelled disclosure, but in a different context. The court discussed the many other cases throughout the United States which have held that the *Herbert* decision left intact a qualified constitutional privilege for confidential sources. (See e.g., *Bruno & Stillman, Inc.* v. *Globe Newspaper Co.* (1st Cir. 1980) 633 F.2d 583, 594-599; *Miller* v. *Transamerican Press, Inc.* (5th Cir. 1980) 621 F.2d 721, 725-727; *Gadsden County Times, Inc.* v. *Horne* (Fla.App. 1983) 426 So.2d 1234, 1240, fn. 7; *DeRoburt* v. *Gannett Co., Inc.* (D.Hawaii 1981) 507 F.Supp. 880, 885-886; *Mize* v. *McGraw Hill, Inc.* (S.D.Tex. 1980) 86 F.R.D. 1, 2-3; *Continental Cablevision* v. *Storer Broadcasting* (E.D.Mo. 1984) 583 F.Supp. 427; *United Liquor Co.* v. *Gard* (D.Ariz. 1980) 88 F.R.D. 123; *Mazzella* v. *Philadelphia Newspapers, Inc.* (E.D.N.Y. 1979) 479 F.Supp. 523.) It should also be noted that Justice Brennan speaking as a circuit magistrate in *In re Roche* (1980) 448 U.S. 1312, 1315, fn. 2, 1316 [65 L.Ed.2d 1103, 1107, 101 S.Ct. 4], concluded that "a majority of the

Court recognizes at least some degree of constitutional protection for news-gatherers' confidences."

In *Herbert* v. *Lando, supra,* 441 U.S. 153, the Supreme Court dealt with a public figure-libel plaintiff's request for access to the mental impressions and editorial processes employed by the defendants-reporters and editors. The facts of *Herbert* are inapposite to the instant case where the libeled plaintiffs sought disclosure of the reporters' confidential news sources. All of the cases cited above are in accordance with this view.

*Branzburg* v. *Hayes* (1972) 408 U.S. 665 [33 L.Ed.2d 626, 92 S.Ct. 2646], from which an inference of a qualified privilege for confidential sources has been gleaned, is also not directly on point. In *Branzburg* the United States Supreme Court dealt with the issue of the extent to which a reporter can refuse to disclose the identities of confidential sources to grand juries investigating crime. (*Id.,* at p. 701 [33 L.Ed.2d at p. 651].) The *Branzburg* plurality recognized that the news gathering process qualifies for some First Amendment protection: "[W]ithout some protection for seeking out the news, freedom of the press could be eviscerated." (*Id.,* at p. 681 [33 L.Ed.2d at p. 639].) Justice Powell in concurrence argued that before disclosure of confidential sources can be ordered a court on a case-by-case basis must balance the freedom of the press against the obligation of all citizens to give relevant testimony with respect to criminal conduct. (*Id.,* at p. 710 [33 L.Ed.2d at p. 656].)

■ As noted in *Gadsden County Times, Inc.* v. *Horn, supra,* 426 So.2d 1234, 1237: "Subsequent to *Branzburg,* the trend among those courts that have addressed the issue of confidential sources is to recognize that a limited or qualified privilege does exist to protect the identity of such sources from forced disclosure absent a showing of compelling interest outweighing that privilege."

Under some circumstances, the First Amendment privilege protection must give way to other societal interest. For example, the fair administration of justice here compels disclosure. It is the news publisher who cross-complained in a matter which arose because of the reports by its own agents and news sources. The shield of privilege cannot be used as a sword. (*Garland* v. *Torre* (2d Cir. 1958) 259 F.2d 545; *KSDO* v. *Superior Court* (1982) 136 Cal.App.3d 375 [186 Cal.Rptr. 211].)

■ Prior to *Mitchell* v. *Superior Court, supra,* 37 Cal.3d 268, *KSDO* v. *Superior Court, supra,* 136 Cal.App.3d 375, 385 set forth a balancing test to be applied as: "In facing the question of whether to compel disclosure of a newsperson's confidential source, we must make a factual analysis to

determine (1) the nature of the proceeding, (2) the status of the newsperson as a party or nonparty, (3) alternative sources of the information, and (4) the relationship of the information to the heart of the claim." The *KSDO* court noted "In attempting to balance the competing interests in the case before us, we note that petitioner is a party newsperson to a civil libel case. This would generally tip the scales in favor of disclosure of the material in question." (*Id.,* at p. 386.)[1]

*Mitchell* v. *Superior Court* observed that KSDO was the only California case on the specific issue as there discussed. Mitchell analyzes numerous other cases from some of which we have gathered the teachings set forth above. Agreeing with the courts which have distinguished *Branzburg* v. *Hayes* and *Herbert* v. *Lando* from application in civil cases, the court continues on to explain that the decisions do not preclude recognition of a *qualified* reporter's privilege in a civil case. The court then confirms that such privilege exists.

To the four factors to be considered and listed in *KSDO* v. *Superior Court, supra,* 136 Cal.App.3d 375, Mitchell recommends that ". . . the court may require the *plaintiff* to make a prima facie showing that the alleged defamatory statements are false before requiring disclosure." (*Mitchell* v. *Superior Court, supra,* 37 Cal.3d 268, 283.) (The italics is ours, to note that in a case such as at bench, where the reporter or publisher is the plaintiff, and it is the defendant who seeks discovery, this requirement perhaps may be inapplicable.)

In the main action where plaintiffs sought disclosure of confidential sources, Judge Dell ordered that failing disclosure, the jury would be instructed that there was no source for the article other than those disclosed. However, this appeal does not encompass the ruling in the main action. Cross-appellants appeal only from the dismissal of their cross-complaint. The balancing to be undertaken to protect the media while allowing appropriate discovery has been required where the *plaintiff* seeks discovery. Of the five factors to be balanced, the most crucial is that the plaintiff demonstrate that the discovery sought goes to "the heart of the claim."

Cross-appellant Penthouse in this respect is in the same position as was the plaintiff in *Anderson* v. *Nixon* (D.D.C. 1978) 444 F.Supp. 1195, 1199.

---

[1]Cross-appellant also states that the California Constitution provides broader protection for reporter's confidential sources than the federal Constitution. (Cal. Const., art. I, § 2.) However, the cases cited by cross-appellant do not involve either libel or a reporter's confidential source. While freedom of association as discussed in *Britt* v. *Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr. 695, 574 P.2d 766] is analogous to freedom of the press the two are not one and the same. The reasoning of *KSDO,* above, on the subject of the divulgence of confidential sources, however, is apposite here.

While not controlling, the language thereof is instructive. The *Anderson* court stated: "Plaintiff is attempting to use the First Amendment simultaneously as a sword and a shield. He believes he was wronged by a conspiracy that sought to retaliate against his sources and to undermine his reliability and professional standing before the public because what he said was unpopular with the conspirators. But when those he accuses seek to defend by attempting to discover who his sources were, so that they may find out what the sources knew, their version of what they told him, and how they were hurt, plaintiff says this is off limits—a forbidden area of inquiry. He cannot have it both ways. Plaintiff is not a bystander in the process but a principal. He cannot ask for justice and deny it to those he accuses." (*Ibid.*)

We are satisfied that the need for disclosure of these sources was compelling, that it went to the heart of cross-respondents' defense.

As to the need for balancing, once a compelling need has been demonstrated, the *Anderson* court stated: "Where, as here, it is the newsman himself who has provoked the legal controversy about which his confidential sources may have relevant information, any 'balancing' seems most unrealistic. Having chosen to become a litigant, the newsman is not exempt from those obligations imposed by the rule of law on all litigants in the federal courts. As a litigant he has a duty to conform to the rules of procedure. The public interest in fair and impartial administration of justice demands nothing less. Indeed, there is strong precedent in analogous situations suggesting that in initiating and maintaining a lawsuit such as the one in this case the newsman waives his qualified privilege of silence where his sources have information that goes to the heart of the defense." (*Id.*, at pp. 1199-1200; fn. omitted.) That principle finds support in other cases even though not all involving news sources problems. (Accord *Wilson* v. *Superior Court* (1976) 63 Cal.App.3d 825 [134 Cal.Rptr. 130]; *Merritt* v. *Superior Court* (1970) 9 Cal.App.3d 721 [88 Cal.Rptr. 337]; *Schlumberger Limited* v. *Superior Court* (1981) 115 Cal.App.3d 386, 393 [171 Cal.Rptr. 413]; *In re Lifschutz* (1970) 2 Cal.3d 415, 433 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; *Fremont Indemnity Co.* v. *Superior Court* (1982) 137 Cal.App.3d 554 [187 Cal.Rptr. 137].)

*Mitchell* does not compel a reversal of the trial court's order at bench. In *Mitchell* the trial court had ordered certain disclosure by the newspersons, the Mitchells, on the basis that the newsperson privilege asserted by the Mitchells did not exist in California. Our state Supreme Court held this to be error, stating: "We conclude that in a civil action a reporter, editor, or publisher has a qualified privilege to withhold disclosure of the identity of confidential sources and of unpublished information supplied by such sources. The scope of that privilege in each particular case will depend upon

the consideration and weighing of a number of interrelated factors." (*Mitchell* v. *Superior Court, supra,* 37 Cal.3d 268, 279.)

By contrast the trial court in the instant matter did not make its order on the basis that no privilege exists. Rather, it was keenly aware of and knowledgeable in the law as it had been expressed and applied in cases where the newsperson or publisher were being sued and expressed the difficulty posed in a blanket use of the result and reasoning of those cases to the case at bench where the discovery was ordered of the newsman or publisher as *plaintiffs.* In asserting the privilege as plaintiffs the newspersons are seeking the use of the privilege as a sword rather than a shield.

Although the trial court did not specifically and sequentially list the factors set forth in *Mitchell,* the record here nonetheless discloses thoughtful consideration by this trial court of those same factors. It then concluded that the scope of the privilege did not extend to these parties as cross-complainants (cross-appellants here).

Equally important as the several factors listed in *Mitchell* is the basic difference here that the publishers at bench asserted the privilege yet are protagonists. *Mitchell* and the cases discussed therein did not deal with this kind of situation. All of *Mitchell'*s analysis and discussions are from the point of view of a reporter/publisher asserting the privilege as a party defendant or as one related thereto in an action against the reporter/publisher.

(5) *The Discovery Ordered Does Not Violate the California Constitution*

■ Cross-appellants contend that the California Constitution article I, section 2 allows greater protection for a reporter's confidential sources and in the alternative that the privacy rights of the sources themselves would be forfeited by disclosure. (Cal. Const., art. I, § 1.)

The decision in *Mitchell* addresses this contention and observes that the constitutional provision protects a publisher, reporter and other newspersons from contempt. The court nonetheless explains: "A party to civil litigation who disobeys an order to disclose evidence, however, may be subject to a variety of other sanctions, including the entry of judgment against him. (See Code Civ. Proc., § 2034.) Neither Evidence Code section 1070 nor article I, section 2, subdivision (b), protects a party against such sanctions." (*Mitchell* v. *Superior Court, supra,* 37 Cal.3d 268, 274.)

The court balances that rule by weighing the freedom of the press protections provided by both the state and federal Constitutions. The language of the *Mitchell* court is instructive. "We cannot ignore or subordinate the First

Amendment values furthered by the protection of confidential sources and information; at the same time, we must recognize the parallel importance of the policy favoring full disclosure of relevant evidence. When called upon to weigh the fundamental values arguing both for and against compelled disclosure, the overwhelming majority of courts have concluded that the question of a reporter's privilege in civil cases must be decided on a case-by-case basis, with the trial court examining and balancing the asserted interests in light of the facts of the case before it. Thus, the courts conclude, there is neither an absolute duty to disclose nor an absolute privilege to withhold, but instead a qualified privilege against compelled disclosure which depends on the facts of each particular case. [Citations.] [¶] The only California case to address this question also concluded that a claim of privilege must be judged by balancing the asserted interests on a case-by-case basis. [Citation.]" (*Mitchell* v. *Superior Court, supra,* 37 Cal.3d 268, 276.)

The discovery ordered in this case was not overbroad. Cross-appellants put in issue the veracity and existence of their reporters' sources when they filed their cross-complaint. The court in *Britt* v. *Superior Court, supra,* 20 Cal.3d 844 stated: "[W]e conclude that while the filing of a lawsuit may implicitly bring about a partial waiver of one's constitutional right of associational privacy, the scope of such 'waiver' must be narrowly rather than expansively construed, so that plaintiffs will not be unduly deterred from instituting lawsuits by the fear of exposure of their private associational affiliations and activities. [Citation.] When such associational activities are *directly relevant* to the plaintiff's claim, and disclosure of the plaintiff's affiliations is essential to the fair resolution of the lawsuit, a trial court may properly compel such disclosure. [Citation.] Even under such circumstances, however, the general First Amendment principles noted above dictate that the compelled disclosure be narrowly drawn to assure maximum protection of the constitutional interests at stake." (*Id.,* at p. 859.)

At bench, cross-respondents requested the identities of the sources used by Penthouse's reporters who, the reporters claim, substantiated the statements made in the article. Without the disclosure of these sources, we are left to believe merely on faith that the reporters in fact had confidential sources and did not simply embellish and expand upon the information contained in the voluminous mass of books, articles and newspaper clippings with which they have so copiously provided us. Under the facts of this case the request is as narrowly drawn as it reasonably could be. (See, e.g., *Willis* v. *Superior Court* (1980) 112 Cal.App.3d 277, 294 [169 Cal.Rptr. 301]; *Bodenheimer* v. *Superior Court* (1980) 108 Cal.App.3d 885, 889 [167 Cal.Rptr. 26]; cf., *GT Inc.* v. *Superior Court* (1984) 151 Cal.App.3d 748, 753 [198 Cal.Rptr. 892]; *Moskowitz* v. *Superior Court* (1982) 137 Cal.App.3d 313, 316-317 [187 Cal.Rptr. 4]; *Board of Trustees* v. *Superior*

*Court* (1981) 119 Cal.App.3d 516, 527 [174 Cal.Rptr. 160]; *Morales* v. *Superior Court* (1979) 99 Cal.App.3d 283, 289-292 [160 Cal.Rptr. 194]; *Fults* v. *Superior Court* (1979) 88 Cal.App.3d 899, 902-904 [152 Cal.Rptr. 210].)

■ The California "shield law" (Cal. Const., art. I, § 2; Evid. Code, § 1070) provides an immunity from being adjudged in contempt. It does not create an absolute privilege for newspeople. Rather, it additionally provides a conditional or qualified privilege. (*KSDO* v. *Superior Court, supra,* 136 Cal.App.3d at pp. 379-380; *Mitchell* v. *Superior Court, supra,* 37 Cal.3d 268.)

■ Cross-appellants contend that disclosure of the sources would violate the individual privacy rights of each source under California Constitution article I, section 1.

This may be so, but it is still within the power of the reporter/publisher to protect that privacy. Disclosure cannot be compelled. The reporter/publisher may still protect the privacy of his sources by limiting his pursuit of truth through the press without additionally pursuing vindication through litigation. The reporter/publisher may still report and expose corruption without danger to the citizen/informant. The law simply does not provide for using the same privilege for both printing and suing. While this may have a "chilling" effect on access to the courts, it does not have such on freedom of the press.

■ Cross-appellants claim that the disclosure of sources could have led to substantial harm due to the cross-respondents' associations with organized crime. The trial court weighed this possibility in the balance and even though it found cross-respondents to be public figures based on their alleged connections to organized crime, it ordered disclosure and we can find no abuse of discretion in the trial court's decision. (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 171 [84 Cal.Rptr. 718, 465 P.2d 854].)

■ Assuming that "privacy interest" of the sources is a proper focus of relevant inquiry, again the answer is that the interest is not absolute. ". . . [T]here exist zones of privacy covering sensitive areas of personal information in which the scope of discovery may be diminished or qualified by a protective order fashioned to accommodate the competing values of the individual right to privacy and . . . the 'important state interest of facilitating the ascertainment of truth . . . in legal proceedings.'" (*Willis* v. *Superior Court, supra,* 112 Cal.App.3d at p. 297.) At the same time we recognize that "[w]hen compelled disclosure intrudes on constitutionally protect-

ed areas, it cannot be justified solely on the ground that it may lead to relevant information. [Citation.] . . . Precision of regulation requires a foundation from which it may reasonably be inferred that the inquiry will likely be productive." (*Fults* v. *Superior Court, supra,* 88 Cal.App.3d 899, 904-905.)

At bench the alleged confidential sources of the reporters had some expectation of privacy in the statements they made to newsreporters. On the other hand, questions arise as to the extent of the privacy and whether it is reasonable for the sources to expect protection of that privacy to the extent cross-appellants here seek to carry it. We need not resolve or further discuss these questions because the singularly dispositive feature of the issue before us is the status of the newsreporter/publisher as plaintiff rather than defender. Even if not express, the law implies the newsperson has made an agreement with the source that he will honor the privacy and confidentiality of the source. It is not unreasonable to interpret that agreement as carrying the added implication that the newsperson is willing to himself forego bringing an action which would compromise or jeopardize the privacy of the source. Here the identity of the source is relevant to the defense against the cross-complaint and hence cross-appellants must choose to breach their promise and disclose or to honor the agreement and abandon their attack as cross-complainants. Moreover, the cross-respondents did lay a proper foundation for their request that the sources be divulged in that it is possible that the article was constructed totally from prior published materials; and without access to the sources claimed by the cross-appellants' reporters, cross-respondents would be foreclosed from pursuing a demonstrably productive line of inquiry relevant to their defense on the cross-complaint.

*American Civil Liberties Union Foundation* v. *Deukmejian* (1982) 32 Cal.3d 440 [186 Cal.Rptr. 235, 651 P.2d 822], on which cross-appellants rely, as forbidding disclosure of the identity of third party nonlitigants, is so dissimilar in facts, it is wholly inapposite to the case before us. That case involved not only interpretation of the public records access statute but also the problem of the wholesale disclosure of names of alleged organized crime figures secured by law enforcement groups. The court in its ruling distinguished between the need for nondisclosure in the case before it involving public records and agencies and an illustrative one involving civil litigation between private parties as is the case before us—in which it expressed that disclosure with protective limitations would be proper.

The summary judgment dismissing cross-appellants' cross-complaint was proper.

## CONCLUSION

The summary judgment dismissing the cross-complaint of Penthouse (cross-appellant here) and in favor of Dalitz and Roen (cross-respondents here) as sanction for failure to obey the order of disclosure, is affirmed.

The cause is remanded to the trial court for further proceedings consistent with the views expressed in the unpublished part of this opinion wherein we reverse the trial court's judgment dismissing appellants' complaint based on the court's order regarding the public-figure status of appellants.

Appellants cross-respondents Dalitz and Roen to recover their costs on appeal.

Roth, P. J., and Gates, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied September 19, 1985. Kaus, J., Broussard, J., and Grodin, J., were of the opinion that the petition should be granted.