[No. B083490. Second Dist., Div. Four. Jan. 31, 1996.]

RICK HARTBRODT, Plaintiff and Appellant, v.
WILLIAM BURKE et al., Defendants and Respondents.

COUNSEL

Engstrom, Lipscomb & Lack and Steven C. Shuman for Plaintiff and Appellant.

Quinn, Kully & Morrow, John J. Quinn, Eric L. Dobberteen, Sharon L. Douglass, Robert L. Corbin and James Bird for Defendants and Respondents.

## OPINION

**VOGEL (C. S.), J.**—The issue presented by this appeal is whether the terminating sanction of dismissal of the complaint may be imposed for

refusal to comply with an order of production made pursuant to Code of Civil Procedure section 2031 when plaintiff's refusal is based on the privilege against self-incrimination. A collateral issue is whether plaintiff may avoid a dismissal by voluntarily dismissing without prejudice prior to the hearing on the motion to dismiss. We resolve the first issue in the affirmative and the collateral issue in the negative and affirm the judgment.

### Procedural and Factual Background

On December 10, 1991, appellant Rick Hartbrodt filed an action against respondents William Burke, James Bainbridge, Bentley Industries Inc., Amtec, Ltd., a Barbados limited partnership, and Quantronics, a Hong Kong limited partnership, to recover $2 million.[1] Hartbrodt's second amended complaint alleged 12 causes of action based on theories of contract and tort. The common and central allegation of Hartbrodt's pleading is the claim that he and the respondents orally agreed to create and operate a 900-number sweepstakes company. The agreement called for Hartbrodt to contribute $2 million as working capital, and Burke and Bainbridge to be the primary operators contributing their personal experience, expertise, and contacts in the industry. For his financial contribution, Hartbrodt was to receive, after the return of his capital, a 45 percent profit participation.

Hartbrodt alleged that he transferred $2 million to Quantronics in accordance with the agreement, but respondents failed to establish the sweepstakes company and refused to return his $2 million.

Respondents filed answers generally denying the allegations of the second amended complaint and raised 16 affirmative defenses.

On July 24, 1992, Burke served Hartbrodt with a formal demand for the production of "[A]udio or visual tape recordings of any communications between Plaintiff and Defendants, or any of them, between January 1, 1991 and the date of this demand." Hartbrodt objected to the demand asserting the privilege against self-incrimination found in the Fifth Amendment of the United States Constitution.

Burke moved for an order compelling production of the tape recording. In his declaration he stated the conversation took place in early July of 1991, prior to the filing of the action and involved ". . . some of the issues raised by [Hartbrodt] in the complaint filed in this case." Burke further averred that

---

[1]Burke and Bainbridge are alleged to be the controlling principals, partners, and shareholders of Bentley Industries Inc., Amtec, Ltd., and Quantronics.

the day after the conversation, Hartbrodt telephoned him, said he had secretly tape-recorded their conversation, played 60 seconds of the tape for Burke, and said he would use the tape recording against Burke unless he was paid $2 million.

Hartbrodt opposed the motion on the ground that the tape recording was privileged and contained no relevant information bearing on the underlying oral agreement. It is uncontroverted that at all relevant times Hartbrodt was a defendant in a federal lawsuit filed by the United States of America in the Southern District of Iowa under the Mail and Wire Fraud Civil Injunction Statute, 18 United States Code section 1345, and that the federal action was stayed pending a criminal investigation of appellant.

The trial court referred the motion to compel to a discovery referee. The referee conducted an in camera hearing to review a transcript of the tape recording. The referee found that the transcript contained relevant information and issued a proposed order for the production of the transcript except for the first two and one-half pages which he concluded were irrelevant. His proposed order directed that the original tape be made available for inspection by respondents' counsel, restricted the use of recording and transcript to this action, and prohibited its dissemination to any third person.[2]

Hartbrodt objected to and did not comply with the referee's proposed order and succeeded in obtaining a de novo review by the trial court of his claim of privilege under the Fifth Amendment. After reviewing the transcript, the pleadings, and the motion papers and allowing extensive oral argument, the trial court found the transcript revealed "core issues" with "some real potential for relevant evidence and/or impeachment." On October 8, 1993, the trial court ordered the tape and transcript produced within 30 days. Hartbrodt failed to comply with the order. On November 17, 1993,

---

[2]The proposed order read in part: "The Recording/Transcript shall be used by the parties and their counsel solely for purposes of the above-captioned lawsuit. Except as otherwise provided in this order, the Recording/Transcript shall not be made available to any third person for any other purpose, nor shall any party or his or its counsel disclose the existence of such recording to any third person for the purpose of attempting to influence such third person to bring any suit or open any investigation against any party. [¶] . . . The Recording/Transcript shall not be disclosed, described or otherwise made available, directly or indirectly, to any prosecutive authority, including, without limitation, the following: the United States Attorney for the Southern District of Iowa; the District Attorney for Los Angeles; or the United States Attorney for the Central District of California. This Order, however, does not purport to relieve any party from his or its legal obligation to respond to any legal process . . . ."

respondents filed a motion for terminating sanctions requesting the action be dismissed with prejudice.[3]

On December 3, 1993, just prior to the hearing on respondents' motion for dismissal, Hartbrodt submitted for filing a voluntary request for dismissal without prejudice pursuant to Code of Civil Procedure section 581, subdivision (c). The trial court rejected appellant's voluntary dismissal and granted respondents' motion to dismiss with prejudice pursuant to Code of Civil Procedure section 2023.

## CONTENTIONS

Appellant contends that the trial court abused it discretion by ordering the production of the tape recording in the following particulars: (1) the tape recording does not contain any evidence relevant to the gravamen of appellant's claim; (2) the information contained on it was available to respondents through alternate sources; and (3) the court failed to consider alternative sanctions. Appellant further contends the court erred in rejecting appellant's submission of a voluntary dismissal without prejudice.

## DISCUSSION

### Relevant Evidence

Appellant's claim that the tape recording does not contain any information relevant to the gravamen of his claim is unpersuasive. The sealed transcript of the tape-recorded conversation between Hartbrodt and Burke is included in the record of this appeal. We have reviewed that transcript and conclude the trial court's characterization is accurate. The tape-recorded conversation is replete with "core issues" and contains "some real potential for relevant evidence and/or impeachment." Except for appellant's claim of privilege, all but the first two and one-half pages of the recorded discussion are either relevant to the pending action or to matters that appear reasonably calculated to lead to the discovery of admissible evidence. (Code Civ. Proc., § 2017.) In sum, our own review and analysis of the transcript of the tape recording wholly validates the trial court's finding that respondents are entitled to the production of the tape recording and transcript.

### Alternate Sources and Alternative Sanctions

Appellant argues that respondents do not need to resort to the tape recording to discover what was said in the recorded conversation because

---

[3]Hartbrodt filed a petition for a writ of mandate to vacate the order to compel production of the tape recording. The petition was denied on December 2, 1993.

Burke, as a party to the discussion, is an independent source of that information. We do not agree. Simply because a party participated in a discussion is not a valid basis for barring his access to any record of it. Because the tape recording is the only accurate and unimpeachable source of what was discussed, it is discoverable. Denying respondents access to the tape-recorded conversation would amount to requiring them to conduct discovery blindfolded.

Appellant suggests less drastic alternatives to dismissal exist that would satisfy respondents' needs and not compel him to waive his privilege against self-incrimination. However, none of the obvious alternatives is satisfactory. It is doubtful that appellant would allow Burke to testify as to what was said between them without testifying to his version of the conversation. And allowing both men (Burke and appellant) to testify about the conversation would be unjust because appellant would be shielding from the trier of fact the only trustworthy and complete record of their conversation. In other words, appellant wants to suppress the tape recording—the best evidence of the conversation—and is willing to take his chances that the trier of fact would find his version of it rather than Burke's more credible. That is a gamble the respondents cannot be compelled to accept.

In *Rosemont* v. *Superior Court* (1964) 60 Cal.2d 709 [36 Cal.Rptr. 439, 388 P.2d 671], the plaintiff was required before depositions were taken to provide the defendants with tape recordings of conversations conducted among the parties and witnesses. The plaintiff refused to comply. The Supreme Court held: ". . . [the] plaintiff is not seeking merely the advantages that would flow from the normal timing of discovery. He is seeking the advantages that would flow from his being able to refresh his recollection from the recordings before giving his deposition while denying to . . . the other parties to those conversations equal opportunity to refresh their recollections before giving their depositions. We held in *Dowell* v. *Superior Court*, 47 Cal.2d 483. . . , that a similar attempt to make one-sided use of a prior statement of a party was obviously inequitable." (*Id.* at pp. 714-715.) It follows that Burke is at least entitled to review the tape to refresh his memory to the same extent available to Hartbrodt. In sum, respondents are entitled to access to the tape recording to conduct discovery and otherwise prepare for trial.

Appellant also suggests that the trial court "could determine what particular issues in the case the transcript could assist Respondents on, and fashion some appropriate evidence preclusion sanctions applicable to those issues which would not have the practical effect of imposing a dismissal, but would undoubtedly make Appellant's case much more difficult or make the defense

easier." The argument fails because it was not made to the trial court. Appellant had the opportunity to review the transcript, to identify issues susceptible to preclusion, and to fashion and propose the orders he now divines would resolve his dilemma, but he nonetheless failed to take those steps. It was not the task of the trial court to extricate appellant by inventing solutions which were not proposed and not obviously available or acceptable. Appellant has steadfastly refused to turn over the transcript and has never suggested that any part of it would be voluntarily disclosed.

Appellant's only proposals for compromise have been either to stay the action until the conclusion of the federal investigation in Iowa or to allow him to dismiss without prejudice with leave to renew his action free of any time bar. These proposals are unacceptable. A plaintiff cannot bring an action and then place it in limbo until it is safe for him to pursue it, requiring the adverse parties to accommodate his convenience while memories fade, witnesses disappear, and the pending litigation frustrates the futures of the defendants.

This case does not present a novel problem. In *Fremont Indemnity Co.* v. *Superior Court* (1982) 137 Cal.App.3d 554 [187 Cal.Rptr. 137], the insured plaintiff sued his fire insurance company to recover for a fire loss where arson was the suspected cause of the fire. The insured refused to give his deposition asserting his privilege against self-incrimination under the Fifth Amendment of the United States Constitution. The *Fremont* court described the issue presented as follows: ". . . [may] a person . . . initiate a lawsuit and then by reliance upon the privilege against self-incrimination effectively prevent the party sued from getting at the facts by way of discovery, and thus prejudice preparation of the defense." (137 Cal.App.3d at p. 557.) In essence that is the same issue we address here.

The *Fremont* court analyzed the issue by reviewing discovery disputes where the commencement of litigation necessarily waived the privilege asserted. (See, e.g., *Newson* v. *City of Oakland* (1974) 37 Cal.App.3d 1050 [112 Cal.Rptr. 890] [plaintiff asserting claim for lost wages compelled to disclose his failure to file income tax returns]; *City & County of S. F.* v. *Superior Court* (1951) 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418] [the physician-patient privilege was waived when the plaintiff placed his physical condition in issue by filing an action for personal injuries]; *Wilson* v. *Superior Court* (1976) 63 Cal.App.3d 825 [134 Cal.Rptr. 130] [by initiating an action against her accountant for malpractice with respect to tax advice she received, the plaintiff tendered issues involving the existence and content of her income tax returns and was precluded from asserting the privileged status of a taxpayer's copies of income tax returns].) Based on this

pattern of decisional law, the *Fremont* court held ". . . the plaintiff's filing of an action to recover on the fire insurance policy operated to waive his constitutional privilege against self-incrimination with reference to any factual issues . . . tendered by the complaint." If a plaintiff persists in claiming his privilege, he will have to dismiss his lawsuit with prejudice. As variously stated in the authorities we have relied upon, " '[plaintiff] cannot have his cake and eat it too.' " (*Fremont Indemnity Co.* v. *Superior Court, supra,* 137 Cal.App.3d at p. 560. See also *Dalitz* v. *Penthouse International, Ltd.* (1985) 168 Cal.App.3d 468, 476-479 [214 Cal.Rptr. 254].)

Having concluded that the trial court's determination that the tape recording must be produced was factually and legally correct, we affirm its order of dismissal. Appellant's vigorous and persistent resistance to respondents' efforts to obtain the tape-recorded conversation is vividly demonstrated in this record. Appellant has willfully obstructed discovery by refusing to produce the tape recording and transcript even after the referee made his proposed order and the trial court reached the same conclusion following a de novo hearing on appellant's claim of the privilege against self-incrimination. Given these circumstances, the trial court did not abuse its discretion by dismissing appellant's action for disobedience of its order to provide discovery. (Code Civ. Proc., § 2023, subd. (b)(4)(C).)

Although it is a commonly stated axiom that discovery sanctions "should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery" (*Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 793 [149 Cal.Rptr. 499]), the trial court has wide discretion to order discovery and broad powers to enforce those orders. Although such powers are not unlimited, they are presumed correct and will not be disturbed in the absence of an abuse of discretion. The trial court granted respondents' motion for dismissal only after appellant willfully refused to comply with its order for the production of the tape recording and resolutely asserted his privilege against self-incrimination. As in *Fremont Indemnity Co.* v. *Superior Court, supra,* 137 Cal.App.3d 544, appellant has insisted on having his cake and eating it too. That, he cannot do.

*Rejection of Voluntary Dismissal*

█ In one last effort to salvage his case, appellant attempted to voluntarily dismiss his case without prejudice and thereby deny to respondents the finality obtained by imposition of the terminating sanction. This tactic would simply defeat the trial court's power to enforce its discovery orders.

In *M & R Properties* v. *Thomson* (1992) 11 Cal.App.4th 899 [14 Cal.Rptr.2d 579], the plaintiffs failed to bring the action to trial within five

years and the defendants filed a motion to dismiss pursuant to Code of Civil Procedure section 583.310 which, if granted, would be a determination on the merits. The day prior to the hearing on the motion, the plaintiffs filed a request for a dismissal without prejudice. On the defendant's motion, the trial court vacated the plaintiffs' voluntary dismissal and granted the defense motion to dismiss for failure to bring the action to trial in five years. The plaintiffs appealed but the appellate court affirmed, holding that a plaintiff cannot defeat a defendant's right to obtain a determination on the merits by simply filing a voluntary dismissal when statutory authority entitles the defense to a final judgment. It follows that appellant cannot defeat respondents' motion for a terminating discovery sanction by filing a voluntary dismissal. The trial court properly rejected appellant's voluntary dismissal without prejudice.

### DISPOSITION

The order of dismissal is affirmed.

Epstein, Acting P. J., and Rubin, J.,* concurred.

---

*Judge of the Municipal Court for the Santa Monica Judicial District sitting under assignment by the Chairperson of the Judicial Council.