[No. F055815. Fifth Dist. May 21, 2009.]

LEWIS C. NELSON & SONS, INC., Plaintiff and Appellant, v.
LYNX IRON CORP. et al., Defendants and Respondents.

**COUNSEL**

Lax & Stevens, Paul A. Lax and Donna E. Kirkner for Plaintiff and Appellant.

Peckar & Abramson, James L. Ferro and Christopher S. Frederick for Defendants and Respondents.

**OPINION**

KANE, J.—Lewis C. Nelson & Sons, Inc. (plaintiff), the general contractor on a school construction project, filed a lawsuit in Fresno County Superior Court against Lynx Iron Corp. (Lynx) and St. Paul Fire and Marine Insurance Company (St. Paul) (jointly, defendants) seeking damages for delays in performance of a subcontract and recovery on a performance bond (the Fresno action). Thereafter, the parties signed a document that defendants believed was a complete settlement of the Fresno action and, consistent with that belief, defendants filed a motion in the trial court to enforce the settlement and enter judgment in their favor pursuant to Code of Civil Procedure section 664.6.[1] While that motion was pending, plaintiff voluntarily dismissed the Fresno action without prejudice. At approximately the same time, plaintiff filed the identical lawsuit in Kern County Superior Court (the Kern action). Defendants asserted their section 664.6 motion in the Kern action, but the trial court there denied the motion on the rationale that the Kern action was not pending at the time of the purported settlement. Frustrated by this turn of events, defendants returned to Fresno County Superior Court and moved to vacate plaintiff's dismissal of the Fresno action on the ground that it was an unfair tactical ploy designed to defeat defendants' ability to expeditiously enforce the settlement under section 664.6. The trial court granted defendants' motion, vacated the dismissal and subsequently heard defendants' motion to enforce settlement under section 664.6, which it likewise granted. Plaintiff appeals on the ground that the trial court abused its discretion in setting aside its voluntary dismissal of the Fresno action. We agree and accordingly reverse.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was the general contractor on a construction project known as the La Vina Middle School, located in Delano, Kern County, California (the project). The owner of the project was Delano Union School District (the District). On January 5, 2005, plaintiff and Lynx entered into a written subcontract wherein Lynx agreed to furnish and install structural steel at the project for a contract price of $2.7 million (the subcontract). St. Paul issued a bond guaranteeing the performance of Lynx under the subcontract.

*Several Disputes and a Settlement Agreement*

During the construction, disputes arose between Lynx and plaintiff. Lynx claimed that it performed all the work set forth in the subcontract and was entitled to additional sums to compensate for change orders made by the

---

[1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

District. Lynx also claimed that a number of plaintiff's asserted backcharges that would have reduced the amounts owed to Lynx were not valid. Meanwhile, plaintiff quietly came to the conclusion that it had been damaged by Lynx's delays that had increased plaintiff's overhead expenses on the project.

A number of letters were exchanged between plaintiff and Lynx in an effort to narrow or resolve the matters in dispute. Plaintiff sent a letter to Lynx on February 22, 2007, stating that the District would not be assessing any liquidated damages based on days of delay. Once this information was confirmed, Lynx was apparently under the impression that any claims based on delay were resolved. On February 28, 2007, Kent Schluter, Lynx's vice-president of operations, wrote a letter to plaintiff summarizing Lynx's existing claims based on the District's change orders and the disputed backcharges. Mr. Schluter proposed that the parties "meet and discuss a final settlement of the outstanding issues at the earliest convenience of all parties." On March 8, 2007, Mr. Schluter sent an additional letter to plaintiff further clarifying the change orders and backcharges that remained in dispute. That letter made a proposal for resolving the disputed matters and stated as follows: "This would resolve all the outstanding issues between our companies and the [District]. Lynx . . . final [contract] amount would then be $2,778,459.79 with a currently due Lynx . . . amount of $457,570.00."

On April 13, 2007, plaintiff filed its complaint in the Fresno action against defendants, alleging causes of action for breach of contract, recovery on performance bond, cancellation of stop notice, and declaratory relief. Among other things, the complaint alleged that Lynx breached the subcontract by failing to perform its work in accordance with the subcontract by "causing delay," thereby resulting in damage to plaintiff.

On May 7, 2007, before the complaint in the Fresno action was served on defendants, the parties met to discuss settlement. Mr. Schluter, who attended the meeting on behalf of Lynx, believed that the purpose of the meeting was a global settlement of all remaining issues in dispute. Dwight G. Nelson, attending the meeting as president of plaintiff, had a more limited objective in view. Mr. Nelson's primary goal was to obtain a release of Lynx's claims against plaintiff because doing so was a precondition (under the prime contract with the District) for receiving the final payment from the District. Mr. Nelson was also willing to resolve certain "direct cost backcharges" of plaintiff that were in dispute. In his declaration describing the May 7, 2007 meeting, Mr. Nelson observed that plaintiff's claims based on Lynx's project delays were never discussed, and Mr. Nelson added that he did not intend to settle any matters other than those that were actually specified.

At the May 7, 2007 meeting, the parties signed a document that listed and resolved, item by item, the disputed change orders and backcharges (the settlement agreement). The settlement agreement was in the form of a particularized list of discrete claims with dollar values initialed by the parties, including the statement that "[t]he initialed items above represent the amounts claimed as outstanding or in dispute by Lynx . . . on the La Vina Middle School project by a representative of Lynx . . . and [plaintiff]." Next to the parties' signatures, at the bottom of the itemized list, the following statement was handwritten: "*Lynx . . . agrees to settle and relinquish all claims for* [*a*] *revised contract amount of $2,762,467.00.*" (Italics added.) Thus, while the settlement agreement provided for Lynx's release of claims against plaintiff, it did not expressly state that plaintiff agreed to release any of its claims against Lynx.[2]

On July 12, 2007, plaintiff retained Lax & Stevens as new counsel in the Fresno action. The Fresno action was served on defendants on July 19, 2007. Defendants responded by filing the first of three motions seeking to enforce the settlement and enter judgment in defendants' favor pursuant to section 664.6.

*Defendants' First Motion to Enforce Settlement and Plaintiff's Dismissal of the Fresno Action Without Prejudice*

On September 10, 2007, defendants filed their motion to enforce settlement and enter judgment pursuant to section 664.6 in the Fresno action. Defendants argued that the settlement agreement of May 7, 2007, was intended to globally resolve *all* of the parties' claims—that is, plaintiff's claims against Lynx, as well as Lynx's claims against plaintiff. The motion was set for hearing on October 11, 2007. Plaintiff's opposition to the motion was due by September 27, 2007. (See § 1005, subd. (b) [opposition papers to be filed and served nine court days prior to hearing].)

Plaintiff did not file opposition to the motion. However, on September 28, 2007, one day after the opposition was due and 13 calendar days prior to the hearing, plaintiff filed a request for voluntary dismissal of the Fresno action without prejudice. The dismissal was duly entered by the clerk on September 28, 2007.[3]

---

[2] At the same time, as noted by defendants, the settlement agreement set a revised contract price to be paid Lynx without expressly reserving any right on plaintiff's part to claim delay damages. In retrospect, it is not difficult to see how the parties might come away with different conclusions about what transpired.

[3] The request for dismissal was signed by plaintiff's counsel on September 18, 2007, and served by mail to defendants' counsel on September 24, 2007. Plaintiff asserts that the request for dismissal was also mailed to Fresno County Superior Court on September 24, 2007.

*The Kern Action and the Second Motion to Enforce Settlement*

On September 20, 2007, plaintiff filed essentially the same lawsuit in Kern County Superior Court. Defendants were served with the Kern action on October 5, 2007. Defendants again filed their motion to enforce settlement, this time in the Kern action. At the December 3, 2007 hearing of that motion, the trial court announced that its tentative ruling was to deny the motion on the ground that it lacked jurisdiction under section 664.6 to enforce the settlement, because the settlement related to the prior Fresno action that had been dismissed. In other words, at the time of the parties' settlement, the Kern action was not pending; therefore, the trial court did not have authority to render judgment under section 664.6.[4] The trial court expressed that it understood defendants' frustration, and suggested that defendants might attempt to return to Fresno. Following oral argument, the motion to enforce settlement in the Kern action was denied.

*Defendants' Motion to Vacate Dismissal*

On March 6, 2008, defendants returned to Fresno County Superior Court and filed their motion to vacate plaintiff's voluntary dismissal of the Fresno action. Defendants argued that their original motion to enforce settlement in the Fresno action was a dispositive motion and that plaintiff's dismissal of the action without prejudice was a tactical ploy to evade an inevitable ruling in defendants' favor.

Plaintiff's opposition to the motion argued that the dismissal of the Fresno action did not avoid an inevitably unfavorable ruling because the outcome of the motion to enforce settlement was not a foregone conclusion. Plaintiff argued that if the motion had been heard, it most likely would have been denied because (1) the settlement agreement related to claims distinct from those raised in the Fresno action, and (2) the express wording of the settlement agreement clearly stated that plaintiff was being released, not Lynx, and evidence contradicting such clear wording would violate the parol evidence rule. Moreover, plaintiff's attorney stated in his declaration that the motivation for dismissing the Fresno action and filing the action in Kern County was to expeditiously move the action to its proper venue.

---

Plaintiff speculates the request for dismissal may have arrived at the court for filing prior to the time opposition was due, even though it was not actually filed or entered until September 28, 2007.

[4] On this jurisdictional issue, the trial court cited *Housing Group v. United Nat. Ins. Co.* (2001) 90 Cal.App.4th 1106, 1112–1113 [109 Cal.Rptr.2d 497].

The trial court's tentative ruling was to *deny* the motion to vacate because, under applicable case law, a plaintiff's right to voluntarily dismiss an action is deemed to be cut off only when an adverse dispositive ruling is a foregone conclusion. According to the tentative ruling, that was not the case because *defendants would not have prevailed* on the motion to enforce settlement since the unambiguous wording of the settlement agreement was that Lynx relinquished its claims against plaintiff, not the other way around. Thus, plaintiff retained its right to dismiss pursuant to section 581, subdivision (c).

Following oral argument, the trial court took the matter under submission. On May 7, 2008, the trial court reversed its tentative ruling and granted the motion to vacate. The trial court explained that the dismissal was purely a tactical maneuver and that defendants were "likely" to have prevailed on the motion to enforce settlement.

With the dismissal set aside, defendants filed their third motion to enforce settlement pursuant to section 664.6. The trial court found the settlement to be ambiguous, admitted parol evidence that the parties intended a global settlement, and granted the motion to enforce the settlement and enter judgment. The trial court's minute order dated June 24, 2008, dismissed the Fresno action with prejudice.[5]

Plaintiff's appeal followed. Plaintiff contends the trial court abused its discretion when it (1) vacated plaintiff's dismissal of the Fresno action, and (2) granted the motion to enforce settlement. As discussed below, the first ground is correct and fully disposes of this appeal.

## DISCUSSION

The dispositive issue in this case is whether the trial court erred in vacating plaintiff's voluntary dismissal, without prejudice, of the Fresno action. We conclude that it did. In so holding, we note that the facts material to our review are undisputed. In applying a statute to undisputed facts, our review is de novo. (*Zapanta v. Universal Care, Inc.* (2003) 107 Cal.App.4th 1167, 1171 [132 Cal.Rptr.2d 842].)

Section 581 allows a plaintiff to voluntarily dismiss an action, with or without prejudice, at any time before the "actual commencement of trial."

---

[5] The trial court neglected to enter a formal judgment. However, since the order disposed of the entire action, we amend it to include a judgment and deem such judgment to have been filed. (See *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 700 [107 Cal.Rptr.2d 149, 23 P.3d 43].)

(§ 581, subds. (b)(1), (c).) As stated by the California Supreme Court: "Apart from certain . . . statutory exceptions, a plaintiff's right to a voluntary dismissal [before commencement of trial pursuant to section 581] appears to be absolute. [Citation.] Upon the proper exercise of that right, a trial court would thereafter lack jurisdiction to enter further orders in the dismissed action." (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784 [176 Cal.Rptr. 104, 632 P.2d 217].) "Alternatively stated, voluntary dismissal of an entire action deprives the court of both subject matter and personal jurisdiction in that case, except for the limited purpose of awarding costs and . . . attorney fees. [Citations.]" (*Gogri v. Jack in the Box, Inc.* (2008) 166 Cal.App.4th 255, 261 [82 Cal.Rptr.3d 629].)

A plaintiff's right to voluntarily dismiss an action ceases at the "commencement of trial." (§ 581, subds. (b)(1), (c).) The concept of "trial" in section 581 is "not limited to 'trial' in the conventional sense but also includes determinations on matters of law which dispose of the entire case, such as some demurrers and pretrial motions." (*Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 909 [84 Cal.Rptr.2d 303].) Therefore, "commencement of trial" under section 581 "includes *pretrial* procedures that *effectively dispose of the case.*" (*Gogri v. Jack in the Box, Inc., supra,* 166 Cal.App.4th at p. 262.) For example, a plaintiff's right to voluntarily dismiss his or her action under section 581 is cut off when a general demurrer is sustained without leave to amend, or when a general demurrer is sustained with leave to amend and the plaintiff fails to amend within the time allowed by the court, even if the trial court has not yet entered a judgment of dismissal on the sustained demurrer. (*Wells v. Marina City Properties, Inc., supra,* 29 Cal.3d at pp. 785, 789.) The California Supreme Court found in these instances that a "trial" had occurred within the meaning of section 581, thereby terminating the plaintiff's right to file a voluntary dismissal. (*Wells,* at p. 785.) If this were not so, " ' "litigation would become interminable, because a party who was led to suppose a decision would be adverse to him could prevent such decision and begin anew, thus subjecting the defendant to annoying and continuous litigation." ' " (*Ibid.,* quoting *Goldtree v. Spreckels* (1902) 135 Cal. 666, 671 [67 P. 1091].)

■ Judicial recognition that a "trial" for purposes of section 581 includes pretrial proceedings that dispose of an action on the merits has led to a more difficult question: When does such a pretrial "trial" *commence* for purposes of ascertaining whether a plaintiff's voluntary dismissal under section 581 was timely? A general answer to that question is that if the action " ' "has proceeded to a determinative adjudication, or to a decision that is tantamount to an adjudication . . ." ' [citation]" (*Zapanta v. Universal Care, Inc., supra,* 107

Cal.App.4th at p. 1171), or if the case has "reached a stage where a final disposition was a mere formality" (*id.* at p. 1174), a trial may be said to have commenced that would terminate the plaintiff's right to file a voluntary dismissal. Shedding further light on the matter, one appellate court recently reviewed and harmonized numerous section 581 cases by using an expanded "mere formality" test as a way to ascertain the "commencement of trial" (*Franklin Capital Corp. v. Wilson* (2007) 148 Cal.App.4th 187, 200–205 [55 Cal.Rptr.3d 424] (*Franklin*) [cases summarized]). Under that test, a voluntary dismissal would be untimely and ineffective if *either* (1) there has been "a public and formal indication by the trial court of the legal merits of the case," or (2) there has been "some procedural dereliction by the dismissing plaintiff that made dismissal [with prejudice] otherwise *inevitable*." (*Id.* at p. 200.)

By way of illustration, the first category of *Franklin*'s "mere formality" test (i.e., a public and formal indication of the merits was pronounced by the trial court) would include cases where there was a formal tentative ruling to grant a dispositive motion. (E.g., *Mary Morgan, Inc. v. Melzark* (1996) 49 Cal.App.4th 765, 771–772 [57 Cal.Rptr.2d 4] [dismissal set aside where filed after adverse tentative ruling on summary judgment motion]; *Groth Bros. Oldsmobile, Inc. v. Gallagher* (2002) 97 Cal.App.4th 60, 72 [118 Cal.Rptr.2d 405] [dismissal set aside where filed after tentative ruling to sustain demurrer without leave to amend].) In such circumstances, there is deemed to be a "commencement of trial" under section 581 that would cut off the plaintiff's right to voluntarily dismiss the action without prejudice. (*Franklin, supra,* 148 Cal.App.4th at pp. 202–204.) A significant example of the second category of untimely dismissals under *Franklin*'s "mere formality" test (i.e., a dispositive adverse ruling became procedurally inevitable) would be the situation where a defendant filed a summary judgment motion meeting his or her initial burden of showing that the plaintiff's case was without merit, and the plaintiff failed to file any opposition. (*Cravens v. State Bd. of Equalization* (1997) 52 Cal.App.4th 253, 257 [60 Cal.Rptr.2d 436] (*Cravens*) [dismissal filed one day prior to hearing on summary judgment motion, long after time for the plaintiff to file opposition had run]; *Franklin, supra,* at pp. 202–204.) We note that in *Cravens*, the plaintiff's case became doomed upon the failure to file opposition because of the peculiarities of summary judgment proceedings. That is, once the defendants met their initial burden under section 437c, the burden shifted to the plaintiff to demonstrate the existence of a triable issue of material fact, and the plaintiff's failure to do so made judgment in the defendants' favor "a formality which [the plaintiff] could not avoid by the stratagem of filing a last minute request for dismissal without prejudice." (*Cravens, supra,* at p. 257; cf. *Zapanta v. Universal Care, Inc., supra,* 107

Cal.App.4th at pp. 1173–1174 [dismissal timely where filed one day before opposition to summary judgment motion was due].)[6]

█ The question of whether a plaintiff's voluntarily dismissal is timely under section 581 depends upon—and must remain tethered to—a reasonable construction and application of the statutory term "commencement of trial." (*Franklin, supra*, 148 Cal.App.4th at p. 207 ["any consideration of when the statutory right to voluntary dismissal terminates must be rationally connected to the statutory phrase 'commencement of trial' "].) Hence, a plaintiff's subjective lack of good faith in seeking a dismissal does not, by itself, terminate the statutory right to dismiss. (*Ibid.*; see also *Gogri v. Jack in the Box, Inc., supra*, 166 Cal.App.4th at p. 265, fn. 8 [the timeliness of a § 581 dismissal is based on an "objective, not a subjective, standard"].)[7]

In the present case, at the time of plaintiff's voluntary dismissal of the Fresno action, there had been no tentative ruling or other "public and formal indication" by the trial court regarding the merits of the case, nor was there any "procedural dereliction" on plaintiff's part that would make a judgment in defendants' favor "inevitable." (*Franklin, supra*, 148 Cal.App.4th at p. 200, italics omitted.) Thus, the case does not come within either broad category of the "mere formality" test set forth in *Franklin*. Clearly, the case had not reached the stage where a final disposition of the case in defendants'

---

[6] We do not suggest that in every case where no opposition is filed to a defendant's summary judgment motion (and the initial burden was met), the plaintiff's right to file a voluntary dismissal is *necessarily* cut off. There may be other circumstances present affecting the status of the case or showing that an adverse judgment was not inevitable, so that the dismissal may still be found timely. For example, in *Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538 [33 Cal.Rptr.3d 761], a plaintiff's voluntary dismissal of a defendant one day prior to the scheduled hearing on the defendant's summary judgment motion was held to be timely because the dismissal was filed to implement a settlement agreement, and the plaintiff's dismissal was actually motivated by that purpose and not as a bad faith tactic to avoid an adverse ruling. (*Id.* at pp. 546–547; see also *Mossanen v. Monfared* (2000) 77 Cal.App.4th 1402, 1408–1410 [92 Cal.Rptr.2d 459] [dismissal filed by litigant upon receipt of summary judgment papers and just after she found herself without counsel who could have asserted meritorious defenses to motion was timely].)

[7] To the extent that *Tire Distributors, Inc. v. Cobrae, supra*, 132 Cal.App.4th at page 546 suggests that the timeliness of a section 581 voluntary dismissal depends solely on the plaintiff's motivation or good faith in dismissing the complaint, we disagree and follow the cases adhering to an objective test of commencement of trial. (*Franklin, supra*, 148 Cal.App.4th at pp. 207–209; *Gogri v. Jack in the Box, Inc., supra*, 166 Cal.App.4th at p. 265, fn. 8.) As *Franklin* notes, "all the Supreme Court cases have stayed close to the legislative text, which confers on plaintiffs a *right* to dismiss prior to *commencement of trial.*" (*Franklin, supra*, at p. 209.)

favor was a mere formality. We conclude there was no "commencement of trial," and thus plaintiff's right to dismiss under section 581 was not cut off.

■ Defendants contend that because the dismissal was filed one day after plaintiff's opposition to the motion was due and no opposition was filed, a judgment in defendants' favor was, in fact, *inevitable*. We disagree. Unlike the summary judgment procedure involved in *Cravens*, there is nothing inherent in a motion to enforce settlement pursuant to section 664.6 that would render any particular outcome "inevitable," or a mere formality, simply because plaintiff failed to file opposition.[8] Outside of the unique summary judgment context in *Cravens*, we know of no case holding that a failure to file an opposition terminates a plaintiff's right to dismiss under section 581. Indeed, it appears that in the absence of special circumstances indicating an adverse judgment is a foregone conclusion (such as in *Cravens*), the general rule is that a party may obtain a voluntary dismissal at any time prior to a ruling, or something tantamount thereto (i.e., a formal and public indication of the merits), on the dispositive motion. (See *Wells v. Marina City Properties, Inc., supra*, 29 Cal.3d at pp. 789–790 [plaintiff's right to dismiss not impaired prior to a *decision* sustaining demurrer without leave]; *Kyle v. Carmon, supra*, 71 Cal.App.4th at p. 912 [upholding voluntary dismissal after trial court heard but had not ruled on a § 425.16 motion]; *Franklin, supra*, 148 Cal.App.4th at p. 219 [dismissal on eve of hearing upheld].) For these reasons, we reject defendants' contention that plaintiff's voluntary dismissal was untimely or ineffective merely because it was filed one day after opposition was due.

Defendants cite *Hartbrodt v. Burke* (1996) 42 Cal.App.4th 168 [49 Cal.Rptr.2d 562] (*Hartbrodt*) in an attempt to show that plaintiff's failure to oppose the motion cut off its right to dismiss. In *Hartbrodt*, the trial court ordered the plaintiff to produce a tape recording to the defendant within 30 days. The plaintiff failed to comply with that order. The defendants moved for terminating sanctions, requesting that the trial court dismiss the case with prejudice as a sanction under the discovery statutes. Just before the hearing on the motion for terminating sanctions, the plaintiff filed a voluntary request for dismissal without prejudice. The trial court denied the plaintiff's voluntary dismissal request and granted the motion for terminating sanctions. The Court of Appeal affirmed. It upheld the trial court's denial of the voluntary dis-

---

[8] In any event, the outcome of the subject motion to enforce settlement was plainly not inevitable. The uncertainty of the outcome was even reflected in the trial court's own tentative ruling expressing an intention to deny the motion to vacate dismissal for the reason that the underlying motion to enforce settlement would likely be *denied*.

missal in the following terms: "In one last effort to salvage his case, [the plaintiff] attempted to voluntarily dismiss his case without prejudice and thereby deny to [the defendants] the finality obtained by imposition of the terminating sanction. This tactic would simply defeat the trial court's power to enforce its discovery orders." (*Id.* at p. 175.) Thus, in *Hartbrodt*, the following special considerations were involved that trumped the voluntary dismissal: (1) the trial court's power to vindicate and enforce its own discovery order, and (2) the existence of that prior order and the plaintiff's clear disobedience thereof "could be viewed as entitling the defendant to a final disposition of the case." (*Kyle v. Carmon, supra,* 71 Cal.App.4th at p. 914 [distinguishing *Hartbrodt*].) These considerations are lacking in the present case. Therefore, we conclude that *Hartbrodt* is distinguishable.

■ Finally, defendants argue that the voluntary dismissal should not be allowed to stand because plaintiff intended it as a tactical ploy to defeat defendants' statutory right to enforce the settlement under section 664.6. While we are not unsympathetic to this argument, it fails for two basic reasons. First, the timeliness of a voluntary dismissal under section 581 is measured by an *objective* standard of whether a commencement of trial has occurred under section 581. (*Franklin, supra,* 148 Cal.App.4th at pp. 207–209; *Gogri v. Jack in the Box, Inc., supra,* 166 Cal.App.4th at p. 265, fn. 8.) Here, as explained above, even though a section 664.6 motion was pending at the time of the dismissal, there was no commencement of trial since the law and motion proceedings had not reached a stage where an adverse outcome was a mere formality or inevitable. Therefore, the dismissal was timely. Second, we see no reason to apply a different standard to a section 664.6 motion than other potentially dispositive motions, such as a demurrer or summary judgment motion, where it has been held that the plaintiff's right to dismiss continues until there is *a commencement of trial.* (See *Wells v. Marina City Properties, Inc., supra,* 29 Cal.3d at p. 785 [demurrer]; *Zapanta v. Universal Care, Inc., supra,* 107 Cal.App.4th at pp. 1171–1172 [summary judgment motion].)

■ We conclude plaintiff's voluntary dismissal of the Fresno action pursuant to section 581 was timely and the trial court erred in setting it aside. Because plaintiff's valid dismissal deprived the trial court of further jurisdiction (except for limited matters such as motions for costs), the trial court's order granting defendants' motion to enforce settlement is void. (*Zapanta v. Universal Care, Inc., supra,* 107 Cal.App.4th at p. 1171; *Gogri v. Jack in the Box, Inc., supra,* 166 Cal.App.4th at p. 268.)

## DISPOSITION

The trial court's orders vacating plaintiff's dismissal and granting defendants' motion to enforce settlement are vacated. The judgment is reversed. The matter is remanded to the trial court with directions to reinstate plaintiff's voluntary dismissal of the action without prejudice. Costs on appeal are awarded to plaintiff.

Cornell, Acting P. J., and Dawson, J., concurred.