Filed 5/11/15  McVeigh v. Trinity Christian Center of Santa Ana CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSEPH MCVEIGH, | |
| Plaintiff, | G049461 |
| v. | (Super. Ct. No. 30-2012-00547030) |
| TRINITY CHRISTIAN CENTER OF SANTA ANA, INC., et al., | O P I N I O N |
| Defendants and Appellants, | |
| TYMOTHY S. MACLEOD, | |
| Movant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Charles Margines, Judge.  Reversed and judgment vacated.

Mahaffey Law Group, Douglas L. Mahaffey and James F. Rumm for Defendants and Appellants.

Parker Shumaker Mills, David B. Parker and Theodore W. Frank for Movant and Respondent.

This appeal challenges a trial court's order correcting a prior judgment nunc pro tunc. Trinity Christian Center of Santa Ana, Inc. (Trinity), International Christian Broadcasting, Inc. (ICB), and Redemption Strategies, Inc. (Redemption) (collectively referred to in the briefing as Trinity Broadcast Network and will be referred to as TBN in this opinion unless the context requires otherwise), filed an appeal raising the following arguments: (1) the trial court lacked authority to modify the prior judgment nunc pro tunc; (2) there was no clerical error to correct; and (3) the modification materially changed the rights of the parties. TBN also complains attorney Tymothy S. MacLeod (MacLeod) lacked standing to request a clerical correction to the judgment and for this additional reason the court's order must be reversed.

We invited the parties to submit supplemental briefing on several questions relating to whether the prior judgment should be set aside as void, rather than being corrected nunc pro tunc. TBN argued the judgment was not void, and alternatively, if the court acted in excess of its jurisdiction, the judgment was merely voidable and not subject to collateral attack. TBN also asserted this court lacks authority to set aside a void judgment in the first instance, it would be unfair to treat MacLeod's underlying motion as a motion to vacate the judgment, and MacLeod lacked standing to bring a motion to vacate the judgment. TBN is wrong. The prior judgment ruling on the merits of the case was made in excess of the court's fundamental jurisdiction and is void on its face. Code of Civil Procedure section 425.16, subdivision (c)(1), expressly limited the trial court's jurisdiction after the case was voluntarily dismissed to the entry of an attorney fee award because a special motion to strike was pending.[1] Consequently, the trial court's order correcting a void judgment is also void and must be reversed.

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated. Section 425.16 is commonly referred to as the anti-SLAPP statute. SLAPP is an acronym for "Strategic Lawsuits Against Public Participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn. 1.)

This appeal concerns but one of many lawsuits filed between the parties following Trinity's termination of Brittany Crouch Koper and her husband Michael Koper from their employment and their removal from Trinity's board.[2] Brittany is the granddaughter of TBN's founders.

A. *The Koper Action*

In September 2011 TBN filed a lawsuit seeking $1.3 million and alleging money had been embezzled from the company by Brittany and Michael (hereafter the Koper Action). In December, TBN added Michael's uncle, Joseph McVeigh (McVeigh), and Michael's father, William Koper, as defendants.

McVeigh hired MacLeod to represent him. MacLeod successfully removed the lawsuit to the United States District Court for the Central District of California and the suit was assigned to Judge David O. Carter. In early January 2012, TBN dismissed the action.

Relevant to this appeal, TBN had asserted two causes of action against McVeigh for (1) conversion, and (2) breach of a promissory note. TBN alleged ICB loaned McVeigh $65,000, and he executed a promissory note agreeing to repay the loan with interest. In the Koper Action, TBN accused McVeigh of defaulting on his loan payment obligations.

B. *McVeigh's Malicious Prosecution Action*

In February 2012, McVeigh, represented by MacLeod, filed a malicious prosecution action (hereafter the McVeigh Action) against TBN and its two lawyers Douglass S. Davert and David C. Loe, individually and as partners of Davert & Loe (hereafter collective referred to in the singular as D&L). The complaint alleged that soon

---

[2] As is often done in family law cases, we will refer to members of the Koper family by their first names to avoid confusion.

after Brittany was promoted to Chief Financial Officer at TBN she discovered TBN's officers and directors were engaged in illegal financial schemes. Brittany and her husband refused to participate and reported TBN to the authorities. TBN fired them and filed the Koper Action. McVeigh maintained the two causes action alleged against him in the Koper Action were meritless and part of a "malicious retaliation campaign against . . . Brittany[.]" McVeigh alleged he was named as a codefendant "to put wrongful pressure" on Brittany. The complaint stated the Koper Action was dismissed after TBN "admitted in writing that the contracts on which they were suing [McVeigh] simply did not exist."

McVeigh also sought declaratory relief concerning the status of his promissory note. He alleged ICB refused to acknowledge the note existed and it would not acknowledge his payments. ICB had accused McVeigh of stealing money even though he was current on his loan payments.

In April 2012, TBN filed three anti-SLAPP motions (one by D&L, one by ICB, and one by Trinity), arguing the McVeigh Action was not viable because the Koper Action was voluntarily dismissed. The motions did not contain requests for attorney fees. A few weeks later, McVeigh voluntarily dismissed the malicious prosecution action and the court clerk took the motions off calendar. The clerk then returned the motions to the calendar based on TBN's request.

McVeigh made an ex parte motion to have the motions taken off calendar. At the May 11, 2012 hearing, the court refused to take the motions off calendar. Approximately one month later, on June 12, 2012, the TBN entities filed three separate motions for attorney fees. McVeigh hired a new attorney and MacLeod substituted out as counsel.

### i. The Minute Order

On July 25, 2012, Judge Francisco F. Firmat held a hearing. In its minute order the court stated it had considered oral argument and "confirms the tentative ruling

4

as follows: [¶] The [s]pecial [m]otions to [s]trike and the [j]oinder are moot since [McVeigh] dismissed the [c]omplaint on May 7, 2012. The three motions for attorney fees are granted. The court finds that [the TBN entities] are the prevailing parties and entitled to reasonable attorney fees and costs per . . . section 425.16."

The court added, "This court disregards the bizarre argument that McVeigh had no longer any standing to defend against these motions after dismissal of the case. [McVeigh] is not a stranger to this action and [TBN is] seeking that this court grant motions for attorney fees against [McVeigh]. [McVeigh] has an absolute due process right to participate in these post-dismissal motions; [McVeigh's] briefs connected to these motions were relevant and were considered by this court. [¶] [TBN's] evidentiary objections are overruled."

Judge Firmat calculated attorney fees as follows: This court notes that these are simple motions; the issue of prevailing party is a simple issue as a result of [McVeigh's] dismissals. [¶] This court awards to [D&L] 70 hours at $300 per hour as reasonable attorney fees, for a total award of $21,000. [¶] This court finds that ICB, Redemption and Trinity had joint issues and even some joint counsel. These two motions could have been prepared without duplication. This court awards a reasonable and necessary total of $21,000 to these moving parties, payable $10,500 to Trinity and $10,500 to Redemption/ICB. [¶] Attorney fees are payable within 30 days. [¶] Counsel for moving party to prepare the [o]rder and give notice of rulings."

ii. *Judge Firmat's Final Judgment*

TBN prepared a final judgment and served it on the parties. It did not serve a copy of the judgment on former counsel MacLeod. The judgment stated, "The court enters judgment in favor of . . . prevailing parties [D&L] and [TBN], on the one hand, and against . . . [McVeigh] on the other hand . . . ." It elaborated as follows: "(1) The [c]ourt enters judgment in favor of [D&L] and against [McVeigh] on his first cause of action for malicious prosecution and further awards these defendants the sum of"

5

$21,000 against McVeigh "for their reasonable attorney[] fees[;] and "(2) The [c]ourt enters judgment in favor of [TBN] and against [McVeigh] on his first cause of action for malicious prosecution . . . [and] on his second cause of action to determine [if the] promissory note [was] valid. The [c]ourt further awards [Trinity $10,500, Redemption $5,250 and ICB $5,250] for their reasonable attorney[] fees . . . ."

Judge Firmat signed the judgment on August 16, 2012. The parties did not appeal this judgment and the attorney fees were paid.

*C. The TBN's New York and California Actions*

TBN filed a malicious prosecution action in New York against McVeigh (*Trinity Christian Center of Santa Ana Inc., et al., v. Joseph McVeigh* (New York Supreme Court Case for the County of Nassau, Case No. 13-002228). In August 2013, TBN amended the complaint to add MacLeod as a defendant.

D&L filed a separate lawsuit against McVeigh and MacLeod in New York. (*Davert & Loe, et al. v. Joseph McVeigh and Tymothy S. MacLeod* (New York Supreme Court Case for the County of Nassau, Case No. 13-010092). We will refer to these lawsuits as the New York Actions.

In August 2013, TBN filed a malicious prosecution action against McVeigh and MacLeod in California, and MacLeod successfully removed it to federal court. (*Trinity Christian Center of Santa Ana Inc., et al., v. Joseph McVeigh et al.* (United States District Court Case No. SACV13-01334). We will refer to this lawsuit as the California Action.

The New York Actions and the California Action were all based on TBN's assertion Judge Firmat's written judgment declared TBN the prevailing party on all causes of action in the McVeigh Action. TBN maintained McVeigh did not appeal the judgment and the time to appeal had expired. The trial courts in New York and California eventually dismissed the actions, however TBN is currently appealing the California Action's dismissal.

6

*G. Section 473 Motion to Correct the Judgment*

On October 15, 2013, MacLeod filed a motion to correct the August 16, 2012, judgment pursuant to section 473, subdivision (d), and the court's "inherent power." He argued TBN was using an errant judgment to wrongly pursue malicious prosecution actions against him in California and New York. Because Judge Firmat had retired, the case was reassigned to Judge Charles Margines.

On November 21, 2013, Judge Margines held a hearing and considered oral argument. He issued a seven-page minute order containing the following findings.

First, Judge Margines recited the procedural history of this "internal family and corporate dispute." He noted TBN's anti-SLAPP motions were set for hearing on May 16, 2012, and McVeigh dismissed the entire action without prejudice on May 7, 2012. MacLeod substituted out as counsel, McVeigh was self-represented for a time, and on July 5, 2012, Michael Koper substituted in as attorney.

Judge Margines explained TBN filed separate motions for attorney fees on June 18, 2012, and scheduled a hearing for the court to consider the anti-SLAPP motions and the attorney fee motions. Judge Margines determined, "On [July 25, 2012, Judge Firmat] heard oral argument and ruled on all the motions. [Judge Firmat] found that the anti-SLAPP motions were moot due to McVeigh's dismissal of his action. [Judge Firmat] then found [TBN was] entitled to fees under the anti-SLAPP statute . . . and awarded fees."

Judge Margines noted there was no evidence the proposed judgment was served on MacLeod and there was no proof of service for notice of entry of this judgment. He stated, "MacLeod states he was not served with the judgment. He first became aware of it when he was sued by [TBN] for malicious prosecution in August 2013." Judge Margines then recited the portion of the judgment stating judgment was entered in favor of TBN on McVeigh's two causes of action.

7

Based on the above facts, Judge Margines reached the following conclusions: First, he cited section 473, subdivision (d), providing a court may correct clerical mistakes in its judgment and may set aside any void judgment. Judge Margines reasoned a trial court has the inherent power to correct a judgment when it is clearly wrong and the error was a result of clerical, rather than judicial error. He elaborated the judgment was not consistent with [Judge Firmat's] minute order because the minute order clearly stated there would be no ruling on the substantive anti-SLAPP motions.

Judge Margines cited *Law Offices of Andrew L. Ellis v. Yang* (2009) 178 Cal.App.4th 869 (*Yang*) to support his conclusion Judge Firmat did not rule on the merits of the anti-SLAPP motion. Judge Margines explained the *Yang* case held a trial court lacked jurisdiction to consider an anti-SLAPP motion if the complaint has been voluntarily dismissed. In these circumstances, a trial court is only permitted to decide if attorney fees and costs should be awarded.

Judge Margines concluded it could not be assumed Judge Firmat assessed the merits of the anti-SLAPP in order to award fees. He noted there was conflicting case authority regarding whether a trial court must adjudicate the merits of the motion to strike when the complaint is dismissed before awarding attorney fees. (Cf. *Lui v. Moore* (1999) 69 Cal.App.4th 745, 752 [must adjudicate merits]; *Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94, 107 (*Coltrain*) [need not adjudicate because defendant is presumed to be the prevailing party].) Judge Margines concluded Judge Firmat must have applied the *Coltrain* standard because, in his minute order, Judge Firmat noted the attorney fee motions were "simple" due to the fact McVeigh voluntarily dismissed his lawsuit. Judge Margines concluded, "This language strongly suggests that the court . . . did not analyze the substantive merits of [TBN's] separate anti-SLAPP motions."

Judge Margines rejected TBN's argument the minute order was superseded by the judgment. It explained the issue was not whether the minute order survives as the

8

operative order, "the point is that the minute order, as a record of the court's ruling that day, expresses the court's intent as to its ruling. [Citation.]"

Judge Margines also rejected TBN's argument that it mattered why McVeigh dismissed his complaint or whether the court relied on section 1032 or section 1033.5 to define prevailing party. Judge Margines determined these issues were not relevant because McVeigh did not seek to correct the finding TBN was the prevailing party under section 425.16, subdivision (c).

Next, Judge Margines considered whether the discrepancy between the judgment and the court's intended ruling was the result of clerical error. Citing relevant legal authority, Judge Margines recognized the pending motion was being made to a different judge from the one who issued the ruling. He wrote, "Here, the court is not being asked to reconsider, and is not reconsidering, the advisability or correctness of a prior order. It is reviewing the record to identify inconsistencies between the court's minute order and the [j]udgment drafted and presented by counsel." He reasoned that when there is clerical error, the correction can be made at any time. Judge Margines ruled MacLeod's motion was timely and must be granted.

In the next paragraph of his minute order, Judge Margines stated the judgment was also void and must be corrected for this additional reason. Citing section 473, Judge Margines stated "judgments void on the face of the record may be vacated at any time . . . ." He explained a plaintiff has the absolute right to voluntarily dismiss an action, and after exercising that right, the trial court "lacks jurisdiction to enter further orders in the dismissed action." (Citing § 581 & *Lewis C. Nelson & Sons, Inc. v. Lynx Iron Corp.* (2009) 174 Cal.App.4th 67, 76 (*Lewis*).) Judge Margines recognized the trial court has limited jurisdiction to award costs and attorney fees after the voluntary dismissal, but other orders would be void. He concluded, "In short, once . . . McVeigh filed his dismissal of his complaint, the court no longer had the jurisdiction to enter judgment against him on that compliant. The [j]udgment, which purports to do just that,

9

is therefore void to that extent.  All the court had jurisdiction to do on [June 25, 2012,] was to award [TBN attorney] fees and costs under the anti-SLAPP statute.  Accordingly, this is the only part of the [j]udgment that can stand.  [¶]  For this independent reason the [j]udgment must be vacated as to the portions that refer to entering judgment, or finding, for [TBN] and against . . . McVeigh on the complaint or any causes of action therein.  Accordingly, MacLeod's motion can be granted on this alternative ground as well."

The trial judge concluded, "For all of the foregoing reasons, . . . MacLeod's motion for [an] order correcting the [August 16, 2012,] judgment entered in this action is [granted].  The judgment will be corrected nunc pro tunc to reflect the court's [July 25, 2012,] ruling."  Judge Margines directed MacLeod to prepare an amended judgment with language the trial judge drafted regarding TBN's attorney fee award.

## II

TBN contends Judge Margines lacked authority to "act as an appellate capacity and modify Judge Firmat's August 16, 2012[,] judgment."  (Capitalization & bold omitted.)  It argues the judgment did not need to be corrected because it was "completely consistent" with Judge Firmat's minute order declaring TBN the prevailing party.  TBN acknowledges the minute order's language indicating the anti-SLAPP motions were moot "created potential ambiguity" as to whether Judge Firmat addressed the merits of those motions.  However, TBN maintains this ambiguity was resolved after the court signed the judgment declaring TBN the prevailing party in the action and there was no legal basis for a different trial judge to enter a correction nunc pro tunc.  This argument (and the rest of the arguments in the briefing) entirely misses the larger problem we found in this case:  It appears Judge Margines properly recognized Judge Firmat's judgment was void on its face, but he corrected the judgment rather than vacating it.  For this reason, we asked the parties to submit letter briefing on the following relevant issues:

10

"(1) On July 25, 2012, the trial court issued a minute order ruling on defendants' anti-SLAPP motions.  Because plaintiff had voluntarily dismissed the underlying action after defendants filed their anti-SLAPP motions, did the trial court lose jurisdiction to rule on the anti-SLAPP motions?  (See *Law Offices of Andrew L. Ellis v. Yang* (2009) 178 Cal.App.4th 869, 879 (*Yang*).)

"(2) On July 25, 2012, the trial court also issued a minute order ruling on defendants' motions for attorney fees and costs pursuant to . . . section 425.16.  Did the trial court continue to have jurisdiction, despite dismissal of the underlying case, for the limited purpose of ruling on the motions for attorney fees and costs?  And if so, was the trial court required to determine who was the prevailing party in the anti-SLAPP motion before awarding fees and costs?  (Compare *Tourgeman v. Nelson & Kennard* (2014) 222 Cal.App.4th 1447, 1456 and *Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94, 107.)

"(3) On August 16, 2012, the trial court signed a judgment prepared by the defendants relating to the motions heard at the July 25, 2012 hearing (i.e., the anti-SLAPP and attorney fee motions).  The judgment repeatedly states the trial court enters 'judgment' in favor of defendants on the underlying causes of actions.  It contains an 'award' of attorney fees.  There are no 'orders' granting or denying the motions that were before it.  Did the trial court have jurisdiction to enter a final judgment on the merits of plaintiff's first and second causes of action or was its jurisdiction limited to entering an *order* relating to . . . section 425.16 attorney fees?

"(4) If the trial court lacked jurisdiction to enter a final judgment on plaintiff's causes of action, does this error result in a voidable or void judgment subject to collateral attack?

"(5) If we assume the August 16, 2012 judgment is void because it was made in excess of the court's jurisdiction, and it is subject to collateral attack, what is the

11

appropriate remedy in this appeal?  Can this court treat the motion to correct the judgment as a motion for relief from a void judgment?  (§ 473, subd. (d).)"  Both parties submitted supplemental letter briefs addressing these issues, which we conclude are dispositive.  We will address in turn each issue below.

*A. The Trial Court's Limited Jurisdiction Following a Voluntary Dismissal*

"Section 581 allows a plaintiff to voluntarily dismiss an action, with or without prejudice, at any time before the 'actual commencement of trial.'  (§ 581, subds. (b)(1), (c).)  As stated by the California Supreme Court:  'Apart from certain . . . statutory exceptions, a plaintiff's right to a voluntary dismissal [before commencement of trial pursuant to section 581] appears to be absolute.  [Citation.]  Upon the proper exercise of that right, a trial court would thereafter lack jurisdiction to enter further orders in the dismissed action.'  [Citation.]  'Alternatively stated, voluntary dismissal of an entire action deprives the court of both subject matter and personal jurisdiction in that case, except for the limited purpose of awarding costs and . . . attorney fees.  [Citations.]'  (*Gogri v. Jack in the Box, Inc*. (2008) 166 Cal.App.4th 255, 261.)"  (*Lewis, supra,* 174 Cal.App.4th at pp. 75-76.)  "'[A]ll subsequent proceeding [are] void.'"  [Citations.]"  (*Yang, supra,* 178 Cal.App.4th at p. 776.)

"[T]he anti-SLAPP statute, . . . section 425.16, anticipates circumstances in which parties dismiss their cases while motions to strike are pending.  In such circumstances, the trial court is given the limited jurisdiction to rule on the merits of the motion in order to decide if it should award attorney fees and costs to the defendants.  [Citations.]  Thus, here, when plaintiff dismissed its case at a time when defendants' anti-SLAPP motion was pending, the trial court continued to have jurisdiction over the case only for the limited purpose of ruling on the defendants' motion for attorney fees and costs.  [Citations.]"  (*Yang, supra,* 178 Cal.App.4th at p. 879.)

In this case, there is no dispute Judge Firmat exercised his jurisdiction and awarded attorney fees and costs to TBN.  The parties devote a great deal of their briefing

12

to discussing the conflicting case authority about how exactly a trial court should consider the "merits of the motion" to determine whether there is a prevailing party entitled to post dismissal attorney fees. They debate whether Judge Firmat used the wrong approach in awarding attorney fees. However, we conclude we need not address this issue because the attorney fee portion of the judgment is not being challenged on appeal. Indeed, MacLeod stated he paid those fees, and TBN is not concerned with the fee award portion of the judgment.

The obvious problem with Judge Firmat's judgment is not his ruling on the attorney fee motion, but that the judgment also contains rulings on the anti-SLAPP motions and the merits of the underlying lawsuit. In other words, Judge Firmat's written judgment reflects the court exercised its jurisdiction far beyond the confines of an attorney fee determination under section 525.16, subdivision (c)(1). Declaring TBN the prevailing party on the anti-SLAPP motions *and* on the merits of the underlying causes of action (the very same two causes of action McVeigh voluntarily dismissed), renders the judgment void on its face.

B. *The Judgment Entered was in Excess of the Trial Court's Limited Jurisdiction*

As stated above, it is well settled that after an action is voluntarily dismissed, the trial court generally lacks jurisdiction to enter any further orders in the case. One exception to this rule is found in section 425.16, subdivision (c)(1), which confers limited jurisdiction to decide the narrow issue of whether attorney fees should be awarded to the moving party of an anti-SLAPP motion. (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784 [court's lack jurisdiction following dismissal]; *Yang, supra,* 178 Cal.App.4th at p. 876; *Lewis, supra,* 174 Cal.App.4th at pp. 75-76; *Gogri v. Jack in the Box, Inc., supra,* 166 Cal.App.4th at p. 261 (*Gogri*).)

Any ruling beyond the narrow issue of attorney fees would be made in excess of the court's fundamental jurisdiction. (*Lewis, supra,* 174 Cal.App.4th at

13

pp. 75-76 [after voluntary dismissal court lacks jurisdiction to grant motion to vacate the dismissal]; *Gogri, supra,* 166 Cal.App.4th at p. 262 [after voluntary dismissal court did not have jurisdiction to grant motion for summary judgment]; *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 909-910 [right to voluntary dismissal absolute and court lacks jurisdiction to enter further orders on pending demurrer or dispositive pretrial motion].) Where a plaintiff has filed a voluntary dismissal of an action, the court is without fundamental jurisdiction to act further, and its subsequent orders are void. (*Paniagua v. Orange County Fire Authority* (2007) 149 Cal.App.4th 83, 89.)

In its letter brief, TBN appears to disagree with this well-established body of case authority because it asserts the trial court *had a duty* to rule on the anti-SLAPP motion and its failure to do so would have been grounds for reversal. Without discussing or attempting to distinguish the relevant case authority, TBN boldly asserts in its letter brief that a trial court absolutely retains jurisdiction to rule on anti-SLAPP motions after a case has been voluntarily dismissed because malicious prosecution cases are different from other types of cases. TBN points out the element of malice in malicious prosecution actions is the same required finding for a successful anti-SLAPP motion. It maintains, "Reaching the specific elements of the underlying cases *may not always be required* to decide if the moving party prevails, but when an anti-SLAPP motion attacks a malicious prosecution action, the trial court *must decide the motion on its merits*, which means the underlying merits of the alleged malicious case must be evaluated." (Italics added.)

Very telling is that TBN provides no legal authority to support this unique theory, nor does it explain why the large body of case law clearly reaching an opposite conclusion is inapt or wrongly decided. Moreover, TBN does not offer any examples of the types of cases it suggests *would not require* an examination of the specific underlying elements before deciding if the moving party would have prevailed on its anti-SLAPP motion. Such a holding would conflict with the well-established rule that all anti-SLAPP motions require the trial court to engage in a two-step process. (§ 425.16, subd. (b)(1).)

14

First, the court must determine if the moving party has shown the action arises from protected activity, and second, it must decide if the moving party has demonstrated a probably of prevailing on the underlying claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Accordingly, all types of cases require the trial court to examine the underlying elements of the alleged causes of action when considering who would have been the prevailing party on the now moot anti-SLAPP motion. TBN cites to no cases, and we found none, holding there are special or different rules when the case challenged is not alleging malicious prosecution.

As aptly stated by MacLeod, the statutory scheme confers limited jurisdiction to honor both a plaintiff's right to voluntary dismiss an action and the Legislature's desire to provide recompense for the defendant's efforts in filing the anti-SLAPP motion before its dismissal. TBN offers no sound policy reason to disturb the balancing of these two important interests simply because the underlying claim is for malicious prosecution.

TBN suggests the court could not have decided the attorney fee motion without also ruling on the anti-SLAPP motion. This is simply untrue. The motions are not dependent on each other. To the contrary, there is a large body of persuasive case authority holding the trial court lacks jurisdiction to rule on the anti-SLAPP motion after the case has been voluntarily dismissed but may separately decide an attorney fee request. A trial court considers the merits of the anti-SLAPP motion *only in the context* of deciding whether attorney fees should be awarded. We found nothing to support TBN's suggestion the court is unable to rule on the attorney fee motion without also entering a ruling on the anti-SLAPP motion.

In addition, TBN maintains Judge Firmat had the authority to enter a judgment on the underlying causes of action because he had to consider the merits in deciding the anti-SLAPP motion. This argument fails for the same reason as TBN's other arguments. Judge Firmat only had authority to consider the underlying merits of

15

the action in the context of an attorney fee award. The trial judge lacked jurisdiction after the case was voluntarily dismissed to enter a judgment in the action or to rule on the anti-SLAPP motion.

Finally, we are unpersuaded by TBN's contention Judge Firmat "had a duty to enter a final [j]udgment" because TBN was entitled to file a SLAPPback action. (§ 425.18.) Not so. A SLAPPback action is an additional remedy available only to defendants who prevail on their anti-SLAPP motions and after *the court* has entered a judgment of dismissal. (§ 425.18 [prior action dismissed pursuant to special motion to strike].) TBN cites to no cases, and we found none, holding a SLAPPback action is available in situations where *the plaintiff* has voluntarily dismissed the action.

TBN asserts the above rule creates an unequitable "safe haven" for malicious litigants. TBN argues that without the opportunity to recover on a SLAPPback action, malicious litigants will be permitted to "wound[] [their] target, dismiss [the complaint] and walk away without further consequences." TBN's objections to the statutory language should be directed at the Legislature which clearly and plainly limited the remedies available to defendants following a plaintiff's voluntary dismissal of the complaint.

## C. The Judgment is Void not Voidable

As explained by our Supreme Court, "Essentially, jurisdictional errors are of two types. 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' [Citation.] [¶] However, 'in its ordinary usage the phrase "lack of jurisdiction" is not limited to these fundamental situations.' [Citation.] It may also 'be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular

16

manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' [Citation.] '"[W]hen a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction."' [Citation.] When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' [Citation.] Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.' [Citations.]" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660-661 (*American Contractors*).)

As stated above, a voluntary dismissal terminates the trial court's personal and subject matter jurisdiction. (*Lewis, supra,* 174 Cal.App.4th at pp. 75-76.) Judge Firmat lacked jurisdiction in the fundamental sense to enter a judgment in favor of TBN on the merits or on the anti-SLAPP motion. These rulings are void and subject to collateral attack at any time.

TBN cites the same Supreme Court case authority (*American Contractors, supra,* 33 Cal.4th 653) to support its argument the judgment was voidable, not void. It contends, "There is no coherent argument wherein it can be said that Judge Firmat lacked an 'entire absence of power to hear or determine the case' or 'an absence of authority over the subject matter of the parties' as required for a judgment to be deemed void. Plainly he had general subject matter jurisdiction over the anti-SLAPP motion and claim for attorney fees and had a duty to resolve these motions for or against the moving party. [¶] Additionally, . . . McVeigh continued to submit filings (including the declaration challenging the anti-SLAPP and attorney's fees previously referenced) with the full intention of having Judge Firmat rule on the issues presented. Jurisdiction existed to rule

17

on these post dismissal motions." TBN then concludes "if" the court exceeded its jurisdiction the judgment would be voidable not void.

Making the argument the court retained jurisdiction to rule on the anti-SLAPP motion and underlying claims does not support the legal conclusion the judgment was voidable not void. Stated another way, TBN's refusal to present an alternative argument acknowledging the judgment may have exceeded the court's jurisdiction precludes any meaningful discussion about whether the jurisdictional nature of the error was fundamental (resulting in a void judgment) or non-fundamental (resulting in a voidable judgment). TBN's suggestion McVeigh conferred jurisdiction by submitting arguments on the merits is meritless. "Subject matter jurisdiction is a fundamental requirement for judicial consideration of claims[,]" and cannot be "'"'conferred by consent, waiver, agreement, acquiescence, or estoppel.'" [Citation.]'" (*Saffer v. JP Morgan Chase Bank, N.A.* (2014) 225 Cal.App.4th 1239, 1248 (*Saffer*).) "'The principle of "subject matter jurisdiction" relates to the inherent authority of the court involved to deal with the case or matter before it.' [Citation.] Thus, in the absence of subject matter jurisdiction, a trial court has no power 'to hear or determine [the] case.' [Citation.] And any judgment or order rendered by a court lacking subject matter jurisdiction is 'void on its face . . . .' [Citation.]" (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196 (*Varian*); see also *American Contractors, supra,* 33 Cal.4th at p. 660 ["[w]hen a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void"].) Such is the case here.

D. *Judge Margines Recognized the Judgment was Void*

Judge Margines recognized the judgment was invalid on its face. One need only look at the judgment roll to see the case was voluntarily dismissed long before the court entered a final judgment purportedly deciding the merits of the dismissed case. Judge Margines correctly determined a post dismissal order could only contain a ruling on the attorney fee motions. In his minute order, Judge Margines determined the

18

judgment could be corrected to reflect this, or alternatively, portions of the judgment could be vacated to leave only the ruling on the attorney fee motions. He drafted and executed an order correctly containing only post dismissal rulings on the attorney fee motions.

However, Judge Margines erroneously decided to correct the void judgment rather than vacating it. "'"'A void judgment [or order] is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one." [Citation.]' (*Bennett v. Wilson* (1898) 122 Cal. 509, 513-514.)" (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1240.) Thus, an order to correct a void judgment is itself void.

The appropriate remedy was to vacate the judgment as void on its face. In his letter brief, MacLeod contends that treating his motion to correct the judgment as a motion for relief from a void judgment would be equitable because his motion was brought under section 473, subdivision (d). That section provides, "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, *and may, on motion of either party after notice to the other party, set aside any void judgment or order*." (§ 473, subd. (d), italics added.) Section 473, subdivision (d), authorizes the trial court to correct its own judgment or set aside a void judgment.

TBN argues it would be improper to convert a defective motion to correct the judgment into the proper procedural device (a motion to vacate) for the following reasons: (1) courts have inherent powers to correct judgments but not vacate them; (2) a motion for relief from a void judgment is different from a motion to correct the judgment although both are authorized by section 473, subdivision (d); (3) TBN would have submitted a different response to address a motion to vacate and offered a significantly

19

larger discussion on the issue of MacLeod's standing to bring the motion; (4) "converting the defective motion to a procedurally correct motion and allowing only a letter brief to address the differences deprives [TBN] of due process. No precedent has been found that allows this[;]" (5) many different arguments would have been presented below and this court would abuse its discretion to substitute a different procedure on appeal.

We conclude the issue may be considered for the first time on appeal. """"[T]he adequacy of the court's subject matter jurisdiction must be addressed whenever that issue comes to the court's attention""" and "may be considered for the first time on appeal [citation], and requires no particular procedural vehicle. [Citations.]" (*Saffer, supra*, 225 Cal.App.4th at p. 1248.) "[A]s the question of jurisdiction is always fundamental [citation], 'a court has inherent power to inquire into jurisdiction of its own motion, regardless of whether the question is raised by the litigants. [Citations.]' [Citation.]" (*In re Estevez* (2008) 165 Cal.App.4th 1445, 1457-1458.)[3]

"'When, as here, there is an appeal from a void judgment, the reviewing court's jurisdiction is limited to reversing the trial court's void acts.' [Citation.]" (*Varian, supra*, 35 Cal.4th at p. 200; *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701.) We therefore reverse Judge Firmat's August 16, 2012, judgment as void and reverse Judge Margines's minute order correcting the void judgment nunc pro tunc.

---

[3] This answers TBN's meritless arguments about lack of standing. TBN does not explain how a judgment void on its face due to lack of subject matter jurisdiction can be saved for this reason.

### III

The trial court's November 21, 2013, minute order correcting the August 16, 2012, judgment nunc pro tunc is reversed. The August 16, 2012, judgment is vacated as void on its face. Movant and Respondent (MacLeod) shall recover his costs on appeal.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


THOMPSON, J.