Filed 5/9/16  Righeimer v. Costa Mesa Police Assn. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JAMES RIGHEIMER et al., | |
| Plaintiffs and Respondents, | G050188 |
| v. | (Super. Ct. No. 30-2013-00670139) |
| COSTA MESA POLICE ASSOCIATION et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeals from orders of the Superior Court of Orange County, Gail Andrea Andler, Judge.  Requests for judicial notice.  Order denying motions to strike the complaint affirmed in part and reversed in part.  Order overruling demurrer affirmed.  Requests for judicial notice denied.

Lewis Brisbois Bisgaard & Smith, Seymour B. Everett; Wood, Smith, Henning & Berman, Shannon M. Benbow and David L. Martin for Defendant and Appellant Costa Mesa Police Association.

Arent Fox, Stephen G. Larson, Jerrold Abeles, Jonathan E. Phillips and Steven A. Haskins for Defendants and Appellants Lackie, Dammeier, McGill & Ethir, Big Giants Investigations, and Christopher J. Lanzillo.

Manly, Steward & Finaldi, John C. Manly and Vince W. Finaldi; Esner, Chang & Boyer, Andrew N. Chang and Holly N. Boyer for Plaintiffs and Respondents.

\* \* \*

This case involves appeals by two parties from orders issued in the same lawsuit. The first appeal is by defendant Costa Mesa Police Association (CMPA) from the denial of its motion to strike each cause of action asserted by plaintiffs James Righeimer, Lene Righeimer, and Steve Mensinger on the ground the complaint constitutes a strategic lawsuit against public participation. (Code Civ. Proc., § 425.16; hereafter anti-SLAPP.) The second appeal, by defendants Lackie, Dammeier, McGill & Ethir (LDME) along with Christopher Lanzillo and Big Giants Investigations (collectively Lanzillo), concerns two orders: (1) the denial of their anti-SLAPP motion seeking to strike each cause of action in the complaint, and (2) an order partially overruling LDME's demurrer to the second amended complaint that was in part based on plaintiffs' noncompliance with Civil Code section 1714.10. In addition, plaintiffs and CMPA have filed requests for judicial notice.

We affirm the trial court's order denying the anti-SLAPP motions as to the causes of action for an alleged assault on Lene Righeimer and for the invasion of Mensinger's privacy by purportedly placing a tracking device on his personal vehicle. However, we reverse the order as to the causes of action primarily based on Lanzillo's allegedly false 911 call and his subsequent statements published in news reports, and remand the case to the superior court for further proceedings. We also affirm the trial court's ruling on LDME's demurrer. Finally, we deny both requests for judicial notice.

2

## FACTS AND PROCEDURAL BACKGROUND

James Righeimer and Mensinger were members of the City of Costa Mesa's city council. CMPA represents the rank and file members of that municipality's police force. In August 2012, the city was involved in negotiations with CMPA over compensation and benefits for its members. Righeimer and Mensinger supported a proposal to outsource some City services, a position opposed by CMPA.

The original complaint alleged CMPA "retained [LDME]," a law firm that advertised itself as "specializ[ing] in the representation of police officers and their associations," "as its agent and representative to further its interests with respect to contract negotiations with the City." With CMPA's knowledge, LDME "hired . . . Lanzillo," a private investigator who owned Big Giant Investigations, "to assist in furthering the objectives of its retention."

According to plaintiffs, LDME maintained a website that included a document referred to as a "Playbook," which discussed actions a peace officer's association could take during contract negotiations to achieve a better outcome. One option mentioned was to "keep the pressure up" on individual city officials, including "councilperson[s]," "until that person assures you of his loyalty and then move on to the next victim." Another suggestion urged an association to encourage its members and the public to appear at city council meetings and complain about the "lack of concern for public safety." The "Playbook" also encouraged peace officer associations to "be in very close contact with [its] attorney during these times to ensure you are not going to get yourself or any of your members in trouble."

On August 22, James Righeimer, Mensinger and other officials toured a Costa Mesa neighborhood in response to concerns expressed at a recent city council meeting about the need for more police patrols in that area. Afterwards, Righeimer and

3

Mensinger went to a restaurant/bar owned by another council member. Plaintiffs allege that while there both Righeimer and Mensinger consumed a soft drink.

James Righeimer left the restaurant/bar and drove home. After he arrived, a police officer knocked on the front door of the residence. The officer asked Righeimer whether he had consumed alcohol and, with Righeimer's consent, conducted a short field sobriety test. Satisfied that Righeimer was not intoxicated, the officer left the residence.

Lene Righeimer saw a man in a car parked down the street from their home that allegedly fit the description of Lanzillo. As the man began to drive away, she stepped into the street in front of his vehicle. When the vehicle stopped, Lene Righeimer asked the driver to identify himself. The driver said, "oh, please," and drove away. The original complaint alleged the vehicle "came so close to [Righeimer] that she felt the heat of the tire and the wind of the car's movement as it passed, putting her in imminent fear of grave bodily harm." In a declaration, Lene Righeimer stated, "I believed that the driver intended to, and was going to, run me over."

Plaintiffs allege they subsequently learned the police contact with James Righeimer was in response to a 911 call from a person who identified himself as Chris Lanzillo. The caller reported that he saw a man, identified as Righeimer, stumble out of the restaurant/bar and drive away in an erratic manner, weaving between lanes and speeding. Lanzillo followed Righeimer to the latter's residence.

Reports about James Righeimer's alleged drunk driving and Lanzillo's 911 call appeared in the local news media. The news reports included several comments attributed to Lanzillo. He purportedly stated that he had been "hired to 'tail' and 'gather dirt' on" council members, including Righeimer and Mensinger. Plaintiffs alleged Lanzillo's actions were part of a "scheme[]" by defendants "to follow" James Righeimer and Mensinger "on August 22, 2012 and illegally entrap them."

Another news article cited in the complaint contained statements by Lanzillo, repeating his claim that he believed James Righeimer was potentially

4

intoxicated when he drove home on August 22. Lanzillo was quoted as questioning the veracity of a receipt Righeimer displayed to corroborate his purchase of a soft drink. Lanzillo repeated his claim that Righeimer's behavior upon leaving the restaurant/bar indicated Righeimer "could be under the influence or possibly just disabled," stating "he was not able to stay in the lane" while driving, "and his speed was over the limit." Further, Lanzillo reportedly said, "I believe the Officer realized who the person was and thought it best to leave it alone."

In August 2013, plaintiffs filed this lawsuit against defendants. The original complaint contained 15 causes of action. All three plaintiffs sought recovery for negligence, negligent hiring, negligent entrustment of agent, intentional infliction of emotional distress, civil conspiracy, unfair business practices, and declaratory relief. James Righeimer and Mensinger alleged violations of their rights under Civil Code sections 51.7 and 52.1. James and Lene Righeimer jointly sought recovery for assault and invasion of privacy. Finally, the complaint contained causes of action of malicious prosecution, slander, and libel in favor of James Righeimer.

The August 22 incident was also investigated by the police and district attorney's office. Mensinger later learned from these investigations that in 2012 a GPS tracking device had been attached to his personal vehicle.

CMPA and LDME/Lanzillo separately demurred to the complaint and filed anti-SLAPP motions. Plaintiffs responded to the motions with a request to conduct discovery. The parties stipulated to have the demurrers heard before the anti-SLAPP motions. Before the hearing, plaintiffs filed a first amended complaint. In it, they added allegations that defendants, "acting in concert, placed" Mensinger "under unauthorized electronic surveillance by affixing" a GPS tracker to his car "without his knowledge or consent." Both groups of defendants promptly demurred to this pleading as well.

After taking the demurrers and anti-SLAPP motions under submission, the trial court sustained the demurrers to the conspiracy count without leave to amend and to

5

the complaint's remaining causes of action with leave to amend. On the anti-SLAPP motions, the court vacated the submission and granted plaintiffs' discovery request, limited to a single deposition of Lanzillo to be completed within two weeks.

Plaintiffs scheduled Lanzillo's deposition. Lanzillo appeared, but invoked his privilege against self-incrimination to nearly all of the questions. Plaintiffs also filed a second amended complaint to which defendants promptly demurred.

Ultimately, the trial court denied the anti-SLAPP motions. It construed much of "the 'petitioning' activity discussed in the complaint [referring to the city's protracted contract negotiations with CMPA] as a discussion of the history of the antagonism between the parties, in order to provide the context" for the causes of action. Concluding "the 'principal thrust or gravamen' of . . . each cause of action [wa]s the false and malicious reports of criminal activity by defendant Lanzillo as the agent for the other defendants," the court ruled defendants failed to satisfy the first prong of the anti-SLAPP analysis. It further concluded "the causes of action as to Lene Righeimer cannot be construed as arising from protected activity." Finally, the court held that, even assuming the causes of action arose from protected activity, Lanzillo's invocation of his Fifth Amendment privilege would preclude defendants from asserting plaintiffs could not satisfy their burden under the second prong.

In a subsequent ruling, the trial court sustained the demurrers to the second amended complaint's causes of action for violations of Civil Code sections 52.1 and 51.7 (counts 5 and 6), malicious prosecution (count 7), and declaratory relief (count 14) without leave to amend. On the assault cause of action (count 9), the court sustained the demurrers without leave to amend as to James Righeimer only. In all other respects, the demurrers were overruled.

6

DISCUSSION

*1. The Requests for Judicial Notice*

Plaintiffs and CMPA have filed requests for judicial notice. Plaintiffs' request concerns two documents: (1) An investigative summary prepared by the Orange County District Attorney's Office; and (2) a press release issued by the district attorney's office concerning the arrest of Lanzillo and another private investigator for several criminal charges arising from their tracking of James Righeimer and Mensinger. CMPA requests that we take judicial notice of the City of Costa Mesa's November 2014 general election results, plus the fact Mensinger is currently Costa Mesa's mayor.

We deny both requests. Evidence Code section 459 and California Rules of Court, rule 8.252(a) authorize an appellate court to grant judicial notice. But plaintiffs' motion asks us to assume the truth of the facts set forth in the investigative report to "support [their] position that the conduct at issue was not protected activity . . . ." "Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning." (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374; *StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 456, fn. 9.) The information in the investigative report is largely hearsay and the mere fact Lanzillo has been criminally charged for his actions concerning plaintiffs does not mean he committed a crime.

CMPA argues the election results are relevant to establish plaintiffs filed this action as a campaign tactic to get re-elected. But even assuming that to be true, the subjective intent of the pleader is not a relevant factor in deciding whether the causes of action in a complaint are subject to an anti-SLAPP motion. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67-68.)

7

*2.  The Order Denying the anti-SLAPP Motions*

       *2.1  Introduction*

       The original and amended complaints filed by plaintiffs are not model pleadings.  They are prolix and contain many irrelevant allegations.  As a result the pleadings obfuscate the true basis of plaintiffs' causes of action.  To further complicate matters, although plaintiffs filed a first amended complaint after defendants filed their initial demurrers and were granted permission to file a second amended complaint, defendants argue their motions to strike must be addressed only to the initial complaint.

       Generally, "a plaintiff may not avoid or frustrate a hearing on the anti-SLAPP motion by filing an amended complaint."  (*Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858, 871.)  But this case presents a unique situation.  Defendants simultaneously filed demurrers *and* anti-SLAPP motions, and then *stipulated* to allowing the trial court to *rule on the demurrers before it considered the motions*.  A ruling on a demurrer necessarily entails the possibility that the opponent will be afforded the opportunity to amend its pleading if possible, and "'[i]t is well established that an amendatory pleading supersedes the original one, which ceases to perform any function as a pleading.'"  (*Foreman & Clark v. Fallon* (1971) 3 Cal.3d 875, 884.)

       In any event, there are only a few and mostly insignificant differences between the factual allegations of the original and the amended complaints.  Under the circumstances of this case, we conclude it is appropriate to limit our anti-SLAPP analysis to those causes of action that remained viable after the trial court ruled on the demurrers to the second amended complaint:  Negligence, negligent hiring, and negligent entrustment (counts 1 through 3), intentional infliction of emotional distress (count 4), unfair business practices (count 8), assault as to Lene Righeimer alone (count 9), invasion of privacy (counts 10 and 11), slander (count 12), and libel (count 13).

*2.2  The Scope of Review*

Code of Civil Procedure section 425.16, subdivision (b)(1) authorizes a court to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  In ruling on an anti-SLAPP motion, a court first determines "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity."  (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.)  "If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim."  (*Ibid.*)

To satisfy the first step, a defendant must establish a "cause of action" is "*based on* an act in furtherance of the defendant's right of petition or free speech."  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)  The latter phrase means "any written or oral statement or writing made before" or "in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" (Code Civ. Proc., § 425.16, subd. (e)(1) & (2)), "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" (Code Civ. Proc., § 425.16, subd. (e)(3)), or "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (Code Civ. Proc., § 425.16, subd. (e)(4)).

If a defendant satisfies the first prong, the burden shifts to the plaintiff to establish a probability of prevailing on the claim by "'"'demonstrat[ing] that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'"'"  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-89.)  "Only a cause of action that satisfies

9

*both* prongs of the anti-SLAPP statute" is "subject to being stricken under the statute." (*Id.* at p. 89.)

Orders granting or denying anti-SLAPP motions are reviewed de novo. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) "'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based,"'" but "'"neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.'"'" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 326.)


*2.3 Analysis*

The trial court found each cause of action's "'principal thrust or gravamen'" was "the false and malicious reports of criminal activity by defendant Lanzillo as the agent for the other defendants," which it held "does not constitute 'protected conduct' within the meaning of [Code of Civil Procedure section 425.16]." Thus, the court ruled defendants failed to carry their burden on the first prong and denied their anti-SLAPP motions.

Defendants challenge the trial court's ruling and further argue plaintiffs did not and cannot establish a probability of prevailing on their claims. As for the causes of action based on the alleged assault of Lene Righeimer (count 9) and invading Mensinger's privacy by purportedly placing a tracking device on his car (count 11), they are wrong. Neither activity constitutes protected conduct. And, even if Code of Civil Procedure section 425.16 did apply, these actions are illegal as a matter of law. (Pen. Code, §§ 240, 637.7.)

But we agree the trial court erred in holding the other alleged tortious activity supporting plaintiffs' causes of action was not protected by the anti-SLAPP law section 425.16. The first, second, third, and fourth, causes of action of the second

10

amended complaint refer to what the complaint describes as the "incidents," a shorthand term that included Lanzillo's actions on August 22 and his subsequent statements to the press. Count 8 (unfair business practices) alleges defendants made "knowingly false and defamatory allegations against [p]laintiffs," and "falsely accus[ed them] of facts [d]efendants knew to be untrue." The remaining counts, which state causes of action for invasion of privacy and defamation, are largely based on Lanzillo's post-August 22 statements to the press.

Lanzillo's 911 call reporting James Righeimer as possibly driving while intoxicated on August 22 was protected conduct. Informing the police about possible criminal activity is "designed to prompt action by law enforcement" and thus constitutes a "[c]ommunication[] that [is] preparatory to or in anticipation of commencing [an] official proceeding[] . . . within the protection of the anti-SLAPP statute." (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1569-1570; *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 966 ["the making of allegedly false police reports" constituted "conduct . . . in furtherance of defendants' constitutional right of petition"]; *Chabak v. Monroy* (2007) 154 Cal.App.4th 1502, 1512 ["statement to the police" that the plaintiff allegedly inappropriately touched the defendant "arose from her right to petition the government and thus is protected activity"].)

The trial court ruled Lanzillo's "reports of criminal activity" constituted unprotected conduct because they were "false and malicious." We disagree with this conclusion. The rule that an anti-SLAPP motion "cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition" (*Flatley v. Mauro, supra*, 39 Cal.4th at p. 317), "is a very narrow exception" to Code of Civil Procedure section 425.16's applicability, and "applies only 'where either the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence.'" (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 210, quoting

11

*Flatley v. Mauro, supra*, 39 Cal.4th at p. 316.) The cases plaintiffs rely on to support the trial court's ruling (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, and *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435), fall within one of these two circumstances. But merely making a 911 call to report possible criminal activity is not per se unlawful and defendants deny Lanzillo's call was knowingly false.

Lanzillo's purported statements subsequently reported in the press also constituted protected activity. Defamation is clearly covered by the anti-SLAPP law. (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 464.) Count 10, alleged a violation of James Righeimer's privacy, citing Lanzillo's statements that he, "a duly-elected public official" was "a person who violates traffic rules, drives drunk and disregards laws of . . . California" constituted "statement[s] . . . made in a place open to the public or a public forum in connection with an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e)(3).)

Thus, the trial court erred in failing to reach the second prong of the anti-SLAPP analysis. In some cases, appellate courts have nonetheless proceeded to decide in the first instance whether the plaintiff met its burden of establishing a probability of prevailing on the claims. But "[t]he majority of appellate courts . . . have declined to do so either because contested evidentiary issues existed or simply because it was appropriate for the trial court to decide the issue first." (*Collier v. Harris* (2015) 240 Cal.App.4th 41, 58 [listing cases].)

We shall remand the present case to the trial court to decide the issues presented by the second prong of the anti-SLAPP motions. The parties presented extensive evidence for their respective positions. Further, defendants asserted numerous objections to plaintiffs' evidence submitted in support of their causes of action.

However, we express one caveat. In its order denying the anti-SLAPP motions, the trial court expressed the opinion that since Lanzillo invoked his privilege

12

against self-incrimination during the deposition, defendants "cannot prevail on their arguments that Plaintiffs have not met their burden under the second prong." In support of this comment, the court cited two cases, *Hartbrodt v. Burke* (1996) 42 Cal.App.4th 168 and *A & M Records, Inc. v. Heilman* (1977) 75 Cal.App.3d 554.

We disagree with this conclusion about the effect of Lanzillo's invocation of his Fifth Amendment right. On the second prong of the anti-SLAPP analysis it is the *plaintiff* that has the burden of establishing the minimal merit of its causes of action. (*Navellier v. Sletten, supra*, 29 Cal.4th at pp. 88-89.) Given the broad scope of tortious conduct alleged by plaintiffs, it is incorrect to conclude Lanzillo's refusal to answer questions during his deposition precluded plaintiffs from satisfying their burden in this case. While Lanzillo's invocation of his self-incrimination privilege may have precluded plaintiffs from directly proving certain facts, they can still carry their burden by proffering sufficient evidence to support an inference of wrongdoing. (*Oasis West Realty, LLC v. Goldman, supra*, 51 Cal.4th at p. 822 ["the proper inquiry in the context of an anti-SLAPP motion 'is whether the plaintiff proffers sufficient evidence for such an inference'"].) Under the circumstances, plaintiffs are in the same position as they would be had Lanzillo responded to their questions with blanket denials of any wrongdoing.

Nor do the cases cited by the trial court support its statement. In *Hartbrodt*, the court affirmed an order dismissing an action entered after the plaintiff, invoking his Fifth Amendment privilege, refused to comply with a discovery order that he produce an audio tape and transcript of a conversation with one of the defendants that he had secretly recorded. *A & M Records* also involved a discovery order precluding the defendants from presenting documentary evidence that they had refused to produce or allowing one deposed defendant testify to matters that refused to answer on Fifth Amendment grounds.

Neither *Hartbrodt* nor *A & M Records* involved a motion to strike brought under Code of Civil Procedure section 425.16. Further, Lanzillo complied with the subpoena to appear for his deposition and there was no attempt by plaintiffs to obtain an

13

order compelling him to answer any of the questions to which he invoked his privilege against self-incrimination during the deposition.

Thus, we shall remand the anti-SLAPP motions to the trial court with directions to decide whether plaintiffs can satisfy their burden of stating and substantiating legally sufficient causes of action on the negligence counts, infliction of emotional distress, unfair business practices, invasion of privacy, and defamation claims.

## 3. Civil Code section 1714.10

### 3.1 Introduction

Civil Code section 1714.10 (hereafter section 1714.10) generally declares, "No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action." To comply with this section the plaintiff must initially file "a verified petition . . . accompanied by the proposed pleading and supporting affidavits stating the facts upon which the liability is based." (Civ. Code, § 1714.10, subd. (a).) Exceptions to the prefiling requirement apply "where (1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." (Civ. Code, § 1714.10, subd. (c).)

"'[S]ection 1714.10 . . . requires the court to initially determine whether the pleading falls either within the coverage of the statute or, instead, within one of its stated exceptions.'" (*Stueve v. Berger Kahn* (2013) 222 Cal.App.4th 327, 331.) If so, "the next

14

step is to ascertain whether the pleaded claims fall within either of the exceptions set forth in subdivision (c) of the statute." (*Ibid*.)

Plaintiffs failed to comply with the prefiling requirement before naming LDME as a defendant in this action. The statute allows an attorney to challenge noncompliance with section 1714.10, subdivision (a) "by demurrer" (Civ. Code, § 1714.10, subd. (b)), and LDME cited this ground in its demurrers to the original and amended complaints. The trial court sustained the demurrer to the original complaint's civil conspiracy cause of action without leave to amend. But it otherwise declined to sustain LDME's claim that plaintiffs had merely added the allegations of conspiratorial activity to the amended complaints' general allegations and incorporated them by reference into each count.

Orders overruling or sustaining demurrers are generally not directly appealable. (*Harmon v. De Turk* (1917) 176 Cal. 758, 759; 9 Witkin, Cal Procedure (5th ed. 2008) Appeal, § 154, pp. 230-231.) However, subdivision (d) of section 1714.10 allows an appeal from the portion of an order overruling a demurrer that "determines the rights . . . of an attorney against whom a pleading has been . . . filed." Thus, LDME is entitled to challenge the order overruling its demurrer to the second amended complaint to the extent the trial court rejected section 1714.10's application to that pleading.

On appeal, LDME also reasserts the other grounds of its demurrer to the second amended complaint's individual counts. Plaintiffs contend, and we agree, that LDME may not raise issues beyond the allegations of conspiracy. The scope of LDME's appeal from the order overruling the demurrer is limited to the applicability of section 1714.10. (*Klotz v. Milbank, Tweed, Hadley & McCloy* (2015) 238 Cal.App.4th 1339, 1349-1350 ["our review is limited to whether the trial court properly denied defendants' demurrer to plaintiffs' causes on the basis that such claims asserted claims for conspiracy between an attorney and the attorney's client"]; *Evans v. Pillsbury, Madison & Sutro* (1998) 65 Cal.App.4th 599, 604, fn. 4 [declining

15

to "address . . . arguments seeking to overthrow portions of the trial court's order sustaining . . . demurrers to other causes of action because subdivision (d) does not authorize review of matters apart from issues related to section 1714.10"].)

### 3.2  Analysis

LDME contends all of the causes of action in the second amended complaint are tainted by plaintiffs' failure to comply with section 1714.10 because, although the trial court struck the civil conspiracy cause of action, plaintiffs took four paragraphs from that count, inserted them in the second amended complaint's general allegations, and incorporated those allegations by reference into each cause of action. Plaintiffs respond the second amended complaint alleges LDME "directly engaged" in the tortious conduct alleged in each count.  Further, plaintiffs contend the exceptions contained in subdivision (c) of the statute apply here, thereby eliminating their need to comply with the statute.

To the extent the second amended complaint bases LDME's liability for acts allegedly committed by Lanzillo, its challenge to the trial court's ruling lacks merit. Section 1714.10 only applies to allegations of "a civil conspiracy" between the attorney and "his or her client."  (Civ. Code, § 1714.10, subd. (a).)  Lanzillo and Big Giants Investigations were LDME's agents, not the firm's client.

As for LDME's representation of CMPA, the second amended complaint does include allegations that defendants formed and participated in a conspiracy and incorporates them into each count.  In *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, the court held section 1714.10 applied to each count of a complaint against a law firm "without regard to the labels attached to the causes of action or whether the word 'conspiracy'—having no talismanic significance— appears in them.  The particular allegations throughout [the] entire complaint of the union of conduct between attorney and client arising out of the legal representation, the absence

16

of other allegations of independent conduct . . ., and the incorporation of conspiracy allegations into every cause of action, more than suffice to subject all the claims . . . to the initial coverage of section 1714.10 . . . ." (*Id.* at p. 824.)

But here, plaintiffs' second amended complaint also alleges other bases of liability, including agency and direct liability for tortious acts Lanzillo committed at LDME's direction. Plaintiffs allege that during Lanzillo's 911 call, he was "in constant electronic communication" with LDME and CMPA. Also, plaintiffs allege the 911 call and the placement of the GPS device on Mensinger's car "were orchestrated by Defendants . . . as part of their routine 'Playbook' strategy." Thus, unlike *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc., supra*, 131 Cal.App.4th 802, LDME's liability is not solely based on an alleged conspiracy with CMPA. (*Id.* at p. 823.)

Further, the second amended complaint's allegations support the first exception to section 1714.10; "the attorney has an independent legal duty to the plaintiff." (Civ. Code, § 1714.10, subd. (c)(1).) In *Klotz v. Milbank, Tweed, Hadley & McCloy, supra*, 238 Cal.App.4th 1339, the court noted "the independent duty exception, 'obviously speaks to a relationship beyond that of attorney-client.' [Citation.] An independent legal duty may . . . arise when an attorney engages in conduct that goes 'way beyond the role of [a] legal representative.' [Citation.] '"Attorneys are expected to stay within the bounds of law in representing their clients and advising about an appropriate course of action . . . . Counsel who circumvent established legal channels to accomplish a desired result, participating with the client in a [tortious] scheme . . ., are not performing the 'normal services of an attorney.' Conduct of this sort exposes counsel to a host of tort claims . . . ."'" (*Id.* at p. 1351.)

The second amended complaint alleges LDME conspired with CMPA to falsely accuse James Righeimer of drunk driving and to covertly place a GPS tracker on Mensinger's car with the intent of finding "dirt" on these council members. Neither act fell within the scope of its attorney-client relationship with CMPA concerning contract

17

negotiations with the City. Thus, LDME cannot use its status as a law firm to "shield [it] from liability when [it or its members] engage[] in conduct that would be actionable if committed by a layperson. An attorney who commits such conduct may be liable under a conspiracy theory when the attorney agrees with his or her client to commit wrongful acts." (*Rickley v. Goodfriend* (2013) 212 Cal.App.4th 1136, 1153.)

LDME contends plaintiffs waived the right to assert this exception by not raising it in the trial court. While generally, "an appellate court will not consider arguments not asserted below," "this rule does not apply when only a question of law is presented." (*Collins v. Department of Transportation* (2003) 114 Cal.App.4th 859, 864, 865.) Since our review of the ruling on LDME's section 1714.10 claim is de novo (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc., supra*, 131 Cal.App.4th at p. 822), we conclude plaintiffs have not waived this point. LDME's alternative argument, that plaintiffs merely alleged CMPA retained LDME as an agent to further its interests, constitutes an inaccurate interpretation of the allegations contained in the second amended complaint.

Thus, we conclude the trial court did not err in overruling LDME's demurrer to that pleading.

DISPOSITION

The order denying appellants' motions brought pursuant to Code of Civil Procedure section 425.16 is affirmed as to count 9, alleging assault against respondent Lene Righeimer, and count 11 to the extent it alleges invasion of respondent Steven Mensinger's privacy. In all other respects the order is reversed and the matter is remanded to the superior court for further proceedings consistent with this opinion. The order overruling appellant Lackie, Dammeier, McGill & Ethir's demurrer is affirmed.

18

The requests for judicial notice are denied.  The parties shall bear their own costs and attorney fees on appeal.

                                     RYLAARSDAM, ACTING P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.